EXECUTION COPY

# PURCHASE AND SALE AGREEMENT

BETWEEN

ENTERGY NUCLEAR GENERATION COMPANY

AND

BOSTON EDISON COMPANY

November 18, 1998

FINALPS.

(n) any rights of Seller under purchase orders, licenses or contracts that are not Material Contracts but that are identified by the parties during the Interim Period and mutually agreed in writing to be an obligation to be assigned to and assumed by Buyer;

(o) all trade secrets, copyrights, patents, trademarks or other intellectual property rights of Seller developed or owned by Seller exclusively in connection with the operation of the Facilities, including without limitation all rights to the Seller-owned software applications listed on Schedule 2.1(o) (collectively, the "Intellectual Property"); provided that Seller shall have no obligation following the Closing to provide Buyer with any updates, maintenance or technical support with respect to the Intellectual Property; and provided further that Seller shall retain an irrevocable, perpetual and fully paid-up license to use the Intellectual Property;

(p) the right to use the drawings, designs, specifications and other documents necessary for the licensing, operation and decommissioning of the Facilities;

(q) American Nuclear Insurers (ANI) nuclear liabilities policies and reserve premium to the extent provided in Schedule 5.12;

(r) the Seller's VEBA assets to the extent and at the time provided in Section 5.7; and

(s) the Transferred Voting Shares.

2.2. <u>Excluded Assets</u>. Notwithstanding anything to the contrary in this Agreement, there shall be excluded from the Acquired Assets to be sold, assigned, transferred, conveyed or delivered to the Buyer hereunder, and to the extent in existence on the Effective Date or on the Closing Date, there shall be retained by the Seller, any and all right, title or interest to the following assets, properties and rights (collectively, the "Excluded Assets"):

(a) the property comprising or constituting any or all of the T&D and Telecommunications Assets;

(b) all Cash, accounts and notes receivable, checkbooks and canceled checks, bank deposits and property or income tax receivables (except for property tax abatements to be apportioned pursuant to Section 2.8(b);

(c) all contracts, instruments or other agreements between the Seller and each of Commonwealth Electric and Montaup relating to the sale by the Seller of electric capacity or energy under wholesale rates, or otherwise subject to regulation by the FERC (the "Wholesale Power Contracts");



FINALPS.

(d) all contracts, instruments or other agreements between the Seller and the municipalities set forth on Schedule 2.2(d) relating to the sale by the Seller of electric capacity or energy under wholesale rates, or otherwise subject to regulation by the FERC (the "Municipal Contracts");

(e) all rights of the Seller in and to any causes of action against a Third Party relating to any period through the Closing Date, whether received as a payment or credit against future liabilities, including without limitation any refunds relating to property Taxes paid by the Seller for any period prior to the Closing Date (except for property tax abatements to be apportioned pursuant to Section 2.8(b)), insurance proceeds and condemnation awards; provided that Seller shall not institute or settle any such cause of action that would have a Buyer Material Adverse Effect;

(f) all rights of the Seller to the words "BECo" and "Boston Edison Company" and any Trademark which is comprised of or comprises any derivative thereof; and

(g) any claims of Seller related or pertaining to the Department of Energy's defaults under the DOE Standard Contract accrued as of the Closing Date, whether relating to periods prior to or following the Closing Date.

2.3. Assumption of Liabilities. On the terms and subject to the conditions set forth herein, from and after the Closing, the Buyer will assume and satisfy or perform all of the following Liabilities of the Seller (the "Assumed Liabilities"):

(a) all Environmental Liabilities and Remediations, except as and to the extent set forth in Section 2.4(b) and subject to Seller's prior Remediations as required by Section 5.15 below;

(b) only to the extent all rights under such agreements and permits are assigned to Buyer, all Liabilities under (i) the Material Contracts, Leases, Emergency Preparedness Agreements and the Transferable Permits in accordance with the terms thereof, (ii) the other contracts, leases and other agreements entered into by the Seller with respect to the Acquired Assets that are identified in accordance with Section 2.1(n), and (iii) the contracts, leases, commitments and other agreements entered into by the Seller with respect to the Acquired Assets during the Interim Period relating to Pre-Approved Projects or Required Nuclear Expenditures; except in each case, to the extent such Liabilities, but for a breach or default by the Seller, would have been paid, performed or otherwise discharged on or prior to the Closing Date, or to the extent the same arise out of any such breach or default;

(c) all Liabilities under the Permitted Encumbrances, except as excluded pursuant to Section 2.4(i);

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BOSTON EDISON COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 99-447C (J. Allegra) |

AMENDED COMPLAINT

1. This is an Amended Complaint for damages by Plaintiff, Boston Edison Company ("Boston Edison"), against Defendant, the United States of America, acting by and through the U.S. Department of Energy ("DOE"), for breach of contract and breach of the implied covenant of good faith and fair dealing, and for just compensation for uncompensated taking in violation of the Fifth Amendment to the U.S. Constitution, caused by DOE's failure to meet its obligations under the Nuclear Waste Policy Act of 1982 ("NWPA" or "Act"), as amended, 42 U.S.C. § 10101 *et seq.*, and its contract with Boston Edison to begin removal and disposal of Spent Nuclear Fuel and high-level nuclear waste ("SNF") at the Pilgrim Nuclear Power Station ("Pilgrim"). This Amended Complaint incorporates Boston Edison's previously filed Complaint in this matter, and supplements and amends that Complaint as set forth herein.

2. Boston Edison was the sole owner and operator of the Pilgrim nuclear-generating facilities in Plymouth, Massachusetts.

3. Pursuant to NWPA, DOE entered into a "Standard Contract" with each of the nation's commercial nuclear power plant owners, including Boston Edison, which required DOE, in return for payments of substantial fees by the owners into a Nuclear

value in the sale of Pilgrim than it would have received had DOE properly fulfilled its contractual and statutory obligations. Pilgrim's value was significantly diminished when it became apparent that DOE would not begin accepting and removing SNF by January 31, 1998. This diminishment continued beyond this deadline as DOE remained in default with no SNF disposal solution in sight. This caused potential buyers either to elect not to participate in the sales process for nuclear facilities or drastically to reduce their price in order to account for the increased risk associated with the uncertain life expectancy of Pilgrim and the anticipated capital expenses associated with storing SNF indefinitely.

7. In addition, as an integral part of the Pilgrim sales process, Boston Edison was required by rules and regulations of the federal Nuclear Regulatory Commission (the "NRC") to fully fund the costs of retirement, dismantlement, decontamination, decommissioning, and SNF management of Pilgrim in such amounts as Entergy and the NRC determined sufficient. Such amounts were substantially in excess of what would have been required if DOE had met its obligations under the Standard Contract and NWPA.

8. Boston Edison also incurred significant costs associated with the interim storage of its SNF up to the closing date of its sale of Pilgrim, including additional capital expenses and related operation and maintenance expenses. These costs would not have been incurred had DOE begun the acceptance and removal of SNF by January 31, 1998, as required. Boston Edison seeks damages for such costs as it incurred up to the date of sale of Pilgrim that would not have been incurred had DOE performed its statutory and contractual obligations pertaining to SNF disposal.

9. Boston Edison's case is distinguishable from the other SNF cases presently before this Court. Those cases have been filed predominately by the existing owner/operators of the nuclear facilities seeking damages related to on-going SNF storage costs. By contrast, as a seller of a nuclear facility, Boston Edison's Complaint and Amended Complaint seek damages associated with the diminished value it realized in the sale of Pilgrim resulting from DOE's failure to meet its obligations under the Act and the Standard Contract, as well as other related costs incurred up to the closing date of the sale. Unlike the owner/operator cases, Boston Edison's damages are fixed and readily ascertainable as of the closing date of its sales transaction.

## JURISDICTION

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1491(a)(1).

## PARTIES

11. Plaintiff Boston Edison is an electric transmission and distribution company subject to the regulatory jurisdiction of the Massachusetts Department of Telecommunications and Energy ("MDTE").

12. Boston Edison is an operating subsidiary of NSTAR, a Massachusetts trust, an investor-owned energy company with approximately $3 billion in annual revenues, providing electricity, gas, and related energy services to approximately 1.4 million customers in Eastern and Southern Massachusetts.

13. Defendant is the United States of America, acting by and through DOE.