**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
(Electronically Filed on December 22, 2004)

| | |
|---|---|
| **ENTERGY NUCLEAR GENERATION CO.,** Plaintiff, v. **THE UNITED STATES,** Defendant. | No. 03-2626C (Judge Lettow) |

**PLAINTIFF'S MOTION FOR LEAVE TO SUPPLEMENT ITS REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON LIABILITY AND OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT ON LIABILITY**

Plaintiff Entergy Nuclear Generation Company ("ENGC") respectfully submits, through the undersigned counsel, this motion for leave to supplement its September 13, 2004 Reply In Support Of Its Motion For Summary Judgment On Liability And Response In Opposition To Defendant's ("the Government") Cross-Motion For Summary Judgment On Liability ("ENGC's Reply"). Leave to supplement ENGC's Reply is necessary and appropriate for Plaintiff to inform the Court of recent and significant developments regarding the Department of Energy's ("DOE") Delivery Commitment Schedule ("DCS") process – events that warrant modifications of and additions to assertions regarding the DCS process that Plaintiff made in its most recent brief.

**FACTUAL BACKGROUND**

In July 2004, DOE sent new instructions to Standard Contract holders directing utilities to submit DCSs "to inform DOE of their plans for utilizing their allocations of projected Civilian

Radioactive Waste Management System (CRWMS) acceptance capacity." 2004 DCS Instructions ¶ 1, Appendix to Plaintiff's Reply In Support Of Its Motion For Summary Judgment On Liability And Response In Opposition To Defendant's Cross-Motion For Summary Judgment On Liability ("Pl. App.") at 132 (Sept. 13, 2004). In doing so, DOE "recognize[d] that many Purchasers have submitted and DOE has approved DCSs based upon the January 31, 1998 operations date included in the Standard Contract. Purchasers should submit new DCSs based upon the currently planned operation date of 2010." 2004 DCS Instructions ¶ 7(a), Pl. App. at 133. In addition to these DCS instructions, DOE issued in July 2004 its "Acceptance Priority Ranking & Annual Capacity Report" ("APR/ACR"). Pl. App. at 140-47. This was the first APR/ACR that the Department has published since 1995 and was explicitly based upon a 2010 planned start of DOE's acceptance of spent fuel. See Pl. App. at 129-30.

Less than five months later (and subsequent to the filing of ENGC's Reply), however, DOE abruptly reversed course and stopped the DCS process. In letters to Standard Contract holders, DOE stated that, despite having received DCS forms from utilities as requested in July 2004, "recent developments relating to the FY 2005 budget along with other issues have led the Department to conclude that the resumption of the DCS process was premature." E.g., Letter from Dave Zabransky to Frank B. Rives received Dec. 1, 2004 (attached hereto as Exhibit A). DOE returned any DCS forms that utilities had submitted in response to the Department's July 2004 instructions, and concluded in this December 2004 letter that once "the Department has determined a revised date for the initial operation of the Yucca Mountain repository, it will resume the DCS process in accordance with the provisions of the Standard Contract." Id.

## DISCUSSION

The fact that DOE has for a second time suspended the Delivery Comment Schedule process again demonstrates the untenability of the Government's position that a plaintiff utility's approved DCSs (or lack thereof) form the basis of the Government's liability for damages and/or breach of contract in this and other spent nuclear fuel ("SNF") cases. Here, as in several other SNF cases, the Government has argued that Plaintiff damages do not result from DOE's January 1998 breach of the Standard Contract because DOE was not specifically obligated to begin accepting Plaintiff's SNF in January 1998. Defendant's Response To Plaintiff's Motion For Summary Judgment On Liability, And Defendant's Cross-Motion For Summary Judgment On Liability at 2-3 (Jul. 29, 2004). Rather, the Government suggests that DOE's obligation to accept Plaintiff's SNF would not have arisen until 1999 at the earliest because, according to the first DCS approved by DOE for the Pilgrim plant, DOE would only begin accepting SNF from Pilgrim in 1999. Id. at 13. The DCS process as implemented by DOE was, however, flawed from the outset and administered in a manner inconsistent with the parties' obligations under the Standard Contract. DOE's recent unilateral re-suspension of the DCS process powerfully reinforces this point.

As Plaintiff previously noted, in issuing a new set of DCS instructions to Standard Contract holders in July 2004, DOE "effectively acknowledg[ed] that the entire [DCS] process conducted in the 1990s is irrelevant." ENGC's Reply at 18 n.7. Now that DOE will – at some unknown point in the future – have to restart the DCS process yet again, the DCS process that was conducted in the 1990s becomes even more irrelevant and cannot possibly form the basis of DOE's waste acceptance obligations under the Standard Contract, as the Government has maintained. In this regard, this Court has repeatedly rejected DOE's attempt to use the DCS

process as a basis for limiting its liability for damages and/or breach of contract in other spent nuclear fuel cases. See ENGC's Reply at 20-23.

Moreover, contrary to the Government's assertions, DOE's breach of the Standard Contract did injure Plaintiff, even if Plaintiff was not at the front of the SNF acceptance queue established by DOE. Once DOE failed to begin accepting SNF from utilities as of January 1998, this delay created a domino effect resulting in DOE being unable to accept Plaintiff's (and all other nuclear utilities') SNF in a timely manner under the Standard Contract. ENGC's Reply at 10-11. Due to this delay, Plaintiff has incurred (and continues to incur) substantial damages to store SNF that DOE was contractually obligated to take. Id. at 11. Now that it appears beyond doubt that the initial operation of the Yucca Mountain repository will be delayed beyond the 2010 date[1] that DOE has officially and repeatedly stated as its "target" over the past decade, the "domino effect" of DOE's delay will extend even further and Plaintiff's damages as a result of the Government's breach will almost certainly increase as well.

[1] Indeed, given that DOE requires utilities to submit DCSs "at least 63 months prior to [the] requested delivery year [for its SNF]," Pl. App. at 132, it would appear that SNF deliveries for any utility in 2010 (or earlier) are no longer even theoretically possible.

## CONCLUSION

Given the recent developments regarding the DOE's renewed suspension of its Delivery Commitment Schedule process – a process upon which the Government relies heavily in responding to Plaintiff's motion for summary judgment and in cross-moving for summary judgment on liability – Plaintiff respectfully requests leave from the Court to supplement its September 13, 2004 reply brief as detailed above.

Dated: December 22, 2004

Respectfully submitted,

s/ Alex D. Tomaszczuk by s/ Jack Y. Chu
Alex D. Tomaszczuk
**SHAW PITTMAN LLP**
1650 Tysons Boulevard
McLean, VA 22102
(703) 770-7940
(703) 770-7901 (fax)

Counsel of Record for Plaintiff
Entergy Nuclear Generation Company

OF COUNSEL
Jay E. Silberg
Devon E. Hewitt
Michael G. Lepre
Walter F. Zenner
Daniel S. Herzfeld
Jack Y. Chu
**SHAW PITTMAN LLP**
2300 N Street, N.W.
Washington, D.C. 20037
(202) 663-8000
(202) 663-8007 (fax)