**Department of Energy**
Washington, DC 20585

JUL 2 7 2004

# Sample Letter

Contract Holder

Dear Contract Holder:

The Department of Energy plans to begin operation of the repository at Yucca Mountain beginning in 2010. In accordance with Article V.B of the Standard Contract for the Disposal of Spent Fuel and/or High-Level Radioactive Waste (Contract), the Department is hereby announcing the resumption of the Delivery Commitment Schedule (DCS) process.

In accordance with the provisions of the your Contract, your DCS submittals for year 2010 are due on or before September 30, 2004. Although you are only required to submit a DCS for your 2010 waste acceptance allocations, to assist us in our planning efforts, the Department encourages the submittal of DCSs for all the years in which you have allocations. In developing your DCS submittals, you should utilize the waste acceptance allocations in the July 2004 Acceptance Priority Ranking/Annual Capacity Report (APR/ACR). The 2004 APR/ACR, DCS Form and Instructions are enclosed. These can all be found on our website on http://www.ocrwm.doe.gov/wat/wat.shtml.

In developing the 2004 APR/ACR, the Department relied upon its records to determine the current Purchaser of its disposal services. As utilized in the 2004 APR/ACR, the Purchaser is the corporate entity that has title to the spent nuclear fuel or high-level radioactive waste covered by the disposal contract. If you believe that the Department's designation of Purchaser is incorrect, please notify me of your concerns so that our records can be adjusted appropriately.

Additionally, the Department would like to take this opportunity to seek further information to assist us in our waste acceptance and transportation planning process. We recognize that your response to this information request is voluntary, and that any information provided will be non-binding on either party. We would encourage you to utilize your best efforts in responding to the following questions:

1. What are your current expectations regarding the characteristics (age, burnup, enrichment) of the spent nuclear fuel that you intend to deliver to the Department during the period 2010-2015?

Printed with soy ink on recycled paper

**EXHIBIT 1**

2. To the extent that you have not submitted DCSs for the period 2011-2019, what are your current plans for utilization (i.e., specific shipping facility) of any waste acceptance allocations that you may have during this period?

Should you consider any of the additional information you provide to be of a proprietary nature, please mark your response accordingly.

Should you have any questions, please feel free to contact me at 202-586-9198.

Sincerely,

David K. Zabransky
Contracting Officer

Enclosures (3)

TVA

Tennessee Valley Authority, 1101 Market Street, Chattanooga, Tennessee 37402-2801

August 24, 2004

Mr. David Zabransky, Contracting Officer
U. S. Department of Energy
Office of Systems Analysis and Strategy Development
RW-20E/Forrestal Building
1000 Independence Ave., SW
Washington, DC 20585

DELIVERY COMMITMENT SCHEDULE - DOE CONTRACT NUMBER: DE-CR01-83NE44420; TVA CONTRACT NUMBER: 1629

Dear Mr. Zabransky:

This is in response to your letter to TVA dated July 28, 2004, which announced the resumption of the Delivery Commitment Schedule (DCS) process and enclosed the July 2004 Acceptance Priority Ranking/Annual Capacity Report (APR/ACR). TVA understands from these documents that DOE has abandoned the March 1995 APR/ACR waste acceptance allocation schedule. Because the information provided in DOE's July 2004 APR/ACR does not provide TVA a waste acceptance allocation for the year 2010, TVA does not plan to submit a DCS for 2010. TVA will submit DCSs for the allocations accorded it in the APR/ACR in accordance with the schedule set forth in our contract.

This response by TVA to DOE's July 2004 APR/ACR is being made without prejudice to, or waiving, any of TVA's rights under the contract or TVA's positions in the current litigation between the parties.

If you have any question regarding the above, please contact me at (423) 751-7960.

Thank you for your assistance.

John B. Carden III
Contract Manager
Procurement -- TVAN Contracts

**EXHIBIT 2**

Printed on recycled paper

**Department of Energy**
Washington, DC 20585

NOV 0 3 2004

QA: N/A

John B. Carden III
Contract Manager
Procurement – TVAN Contracts
Tennessee Valley Authority
1101 Market Street
Chattanooga, Tennessee 37402-2801

Dear Mr. Carden:

This letter responds to your August 24, 2004 letter that replied to my July 28, 2004 letter announcing the resumption of the Delivery Commitment Schedule (DCS) process. Your letter indicates that Tennessee Valley Authority (TVA) will not be submitting DCSs for allocations accorded it by the 2004 Acceptance Priority Ranking/Annual Capacity Report (APR/ACR) until required by the schedule set forth in the disposal contract between TVA and the Department of Energy (DOE).

Your letter states that "TVA understands that DOE has abandoned the March 1995 APR/ACR waste acceptance allocation schedule." As an initial point of clarification, the method of allocating acceptance positions prior to the submission and approval of DCSs used in the 2004 APR/ACR is precisely the same as the method used in the 1995 APR/ACR. Specifically, both the 1995 APR/ACR and the 2004 APR/ACR utilize an "oldest fuel first" method of allocating acceptance positions in the acceptance queue as provided by the Standard Contract. That method of allocation has not changed and is not expected to change, absent some future amendment to the Standard Contract.

With regard to the acceptance schedule identified in the 2004 APR/ACR, that schedule reflects DOE's current planning for acceptance of SNF at the Yucca Mountain repository once operations begin in 2010, assuming that various factors upon which DOE's planning is based remain unchanged.

With regard to your suggestion that DOE has "abandoned" the 1995 APR/ACR "schedule," it is unclear whether you are referring to the rates at which DOE now anticipates it will be able to accept SNF from Purchasers under the Standard Contract beginning in 2010 or whether, instead, you are referring to an abandonment of the DCSs that were approved in conjunction with the 1991 ACR, the 1992 ACR, and the 1995 APR/ACR. Because TVA has never obtained any approved DCSs, we presume that TVA wants to ensure that DOE anticipates its ability to approve DCSs to be submitted in the future based upon the allocations identified in the 2004 APR/ACR. To the extent that TVA's concern relates to DOE's ability to approve future-submitted DCSs, we anticipate that, based upon current progress at the Yucca Mountain site, we will approve DCSs submitted in accordance with the allocations identified in the 2004 APR/ACR. Although Purchasers are certainly entitled to submit DCSs requesting acceptance of

Printed with soy ink on recycled paper

**EXHIBIT 3**

SNF under different allocation scenarios, DOE does not anticipate that it will be able to approve those requests in light of its obligations to allocate SNF acceptance positions to all Purchasers on an "oldest fuel first" basis and in light of the limitations upon the amount of SNF that DOE can accept in any given year. However, Articles V.B, V.C, and XVI of the Standard Contract provide a mechanism for resolving any disputes about acceptance allocations and disapprovals of DCS submissions.

To the extent that TVA has concerns about the interrelationship between previously approved DCSs and any new DCSs that DOE receives, the DCS approval process should eliminate those concerns. DOE understands that, when it approved DCSs from 1992 through 1997, it created commitments to accept specific amounts of SNF from specific Purchasers during specific periods of time, and, as you know, DOE's delay in accepting SNF in accordance with those DCSs is now the subject of litigation in the United States Court of Federal Claims. Although DOE had hoped when the earlier DCSs were being reviewed beginning in 1992 that it would be able to begin SNF acceptance in 1998 for storage in a monitored retrievable storage facility and based its acceptance rates upon that scenario, DOE currently anticipates being able to begin SNF acceptance at the Yucca Mountain repository in 2010. Because of the different types of facilities contemplated for acceptance in 1998 and in 2010, DOE believes that, once it begins accepting SNF, it will be in a position to accept SNF at a different rate at a repository than it had anticipated when it previously reviewed and approved DCSs for acceptance at a monitored retrievable storage facility. Accordingly, in the 2004 APR/ACR, we have identified new allocations based upon anticipated acceptance rates that are higher than those in the 1991, 1992, and 1995 ACRs.

Because of the increased anticipated acceptance rates and the currently anticipated acceptance dates, it will be difficult to plan for acceptance of SNF based upon the previously approved DCSs, which contain allocations that do not conform to the current anticipated rates. In addition, Purchasers may now wish to change the location from which the SNF is to be accepted or the dates of discharge identified in the original DCS submissions. Accordingly, any new DCSs that Purchasers submit may reflect these changes or request acceptance of the additional SNF covered by the new allocations granted. We anticipate that any new DCSs that are approved will replace, rather than supplement, the previously approved DCSs. To eliminate any potential confusion regarding the relationship between previously approved DCSs and new DCSs, we will seek, prior to approving new DCSs from any Purchasers with previously approved DCSs, an agreement in writing that any new DCSs that are approved actually replace, rather than supplement, the previously approved DCSs. That agreement will be reflected in any future DCS approvals.

Please contact me if you have any questions.

Sincerely,

David Zabransky
Contracting Officer
Office of System Analysis & Strategy Development