**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
(Electronically Filed on April 28, 2005)

| | |
|---|---|
| **ENTERGY NUCLEAR GENERATION CO.,**<br><br>Plaintiff,<br><br>v.<br><br>**THE UNITED STATES,**<br><br>Defendant. | No. 03-2626C<br>(Judge Lettow) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO CONSOLIDATE OR, IN THE ALTERNATIVE, FOR ISSUANCE OF A SUMMONS <u>PURSUANT TO RCFC 14(a) AND NOTICE PURSUANT TO RCFC 14(b)</u>**

Alex D. Tomaszczuk
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
1650 Tysons Boulevard
McLean, VA 22102
(703) 770-7940
(703) 770-7901 (fax)

Counsel of Record for Plaintiff
Entergy Nuclear Generation Company

<u>Of Counsel</u>:

Jay E. Silberg
Daniel S. Herzfeld
Jack Y. Chu
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
2300 N Street, N.W.
Washington, DC 20037-1128
(202) 663-8000
(202) 663-8007 (fax)

April 28, 2005

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .......... ii

**ARGUMENT** .......... 1

I. ENGC And BECO Are Seeking Non-Overlapping Damages Based On Different Timeframes .......... 2

A. ENGC's Damages Are Largely Based On DOE's Continued Nonperformance .......... 3

B. BECO's Damages Are Based On Past Events .......... 4

C. BECO's "Diminution In Value" Claim Has No Bearing On ENGC's Damages .......... 5

II. The Government's Other Reasons For Consolidation Are Not Unique To ENGC's Case, And This Court Has Repeatedly Declined To Consolidate The SNF Cases On These Grounds .......... 7

III. The Use Of RCFC 14 Summons and Notice Is Inappropriate Here Since The Government Has No "Contingent Claim" Against ENGC .......... 9

**CONCLUSION** .......... 11

# TABLE OF AUTHORITIES

## Cases

Ala. Power Co. v. Dep't of Energy,
307 F.3d 1300 (11th Cir. 2002) .......... 11

Boston Edison Co. v. United States,
64 Fed. Cl. 167 (2005) .......... 3, 5

Commonwealth Edison Co. v. United States,
56 Fed. Cl. 652 (2003) .......... 7

Energy Capital Corp. v. United States,
302 F.3d 1314 (Fed. Cir. 2002) .......... 6, 8

Entergy Nuclear Generation Co. v. United States,
64 Fed. Cl. 336 (2005) .......... 2, 3

Indiana Michigan Power Co. v. United States,
57 Fed. Cl. 88 (2003) .......... 7

Karuk Tribe of Cal. v. United States,
27 Fed. Cl. 429 (1993) .......... 2

Maine Yankee Atomic Power Co. v. United States,
225 F.3d 1336 (Fed. Cir. 2000) .......... 8

Penda Corp. v. United States,
44 F.3d 967 (Fed. Cir. 1994) .......... 11

Philadelphia Suburban Corp. v. United States,
211 Ct. Cl. 354 (1976) .......... 11

Southern Cal. Edison Co. v. United States,
226 F.3d 1349 (Fed. Cir. 2000) .......... 10

Wells Fargo Bank, N.A. v. United States,
88 F.3d 1012 (Fed. Cir. 1996) .......... 9

## Constitution, Statutes, Rules & Regulations

41 U.S.C. § 114 .......... 9

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
(Electronically Filed on April 28, 2005)

| | |
|---|---|
| **ENTERGY NUCLEAR GENERATION CO.,**<br><br>Plaintiff,<br><br>v.<br><br>**THE UNITED STATES,**<br><br>Defendant. | No. 03-2626C<br>(Judge Lettow) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO CONSOLIDATE OR, IN THE ALTERNATIVE, FOR ISSUANCE OF A SUMMONS PURSUANT TO RCFC 14(a) AND NOTICE PURSUANT TO RCFC 14(b)**

Pursuant to RCFC 7.1(a), Plaintiff Entergy Nuclear Generation Company ("ENGC"), by and through its undersigned counsel, respectfully files this response to Defendant's (the "Government") Motion To Consolidate Or, In The Alternative, For Issuance Of A Summons Pursuant To RCFC 14(a) And Notice Pursuant To RCFC 14(b) dated April 11, 2005 ("Motion to Consolidate"). The Motion to Consolidate seeks to consolidate, pursuant to RCFC 42, ENGC's action with the Boston Edison v. United States case (No. 99-447C) ("Boston Edison") that is also before the Court.[1] In its Motion, the Government has mischaracterized and overstated the significance of any commonalities, factual or otherwise, between this case and Boston Edison. In addition, many of the reasons that the Government has proffered in support of consolidation are not unique to this case, but merely repeat the same arguments that it has unsuccessfully put forward in its prior efforts to consolidate all the spent nuclear fuel ("SNF") damages cases –

[1] The Government had previously sought consolidation of this case with Boston Edison in the parties' Joint Status Report dated February 20, 2004. At the March 18, 2004 status conference in this case, the Court declined to consolidate the cases. See Transcript, March 18, 2004 Status Conference at 20-24.

attempts that judges of this Court have repeatedly declined to grant over the last four years. For these and other reasons stated herein, the Motion to Consolidate should be denied. The Government's alternative motion for issuance of a summons to ENGC in Boston Edison and to Boston Edison ("BECO") in this case pursuant to RCFC 14(a) and for notice to ENGC and BECO pursuant to RCFC 14(b) should also be denied, since the use of summons and notice is inappropriate here. Given the different nature of these plaintiffs' respective damages claims, the Government does not have the required "contingent claim" against ENGC.

## ARGUMENT

The propriety of consolidation depends on whether the interest of judicial economy outweighs the potential for delay, confusion, and prejudice that may result from consolidation. Karuk Tribe of Cal. v. United States, 27 Fed. Cl. 429, 433 (1993). As explained below, any judicial economy to be gained from consolidation of these cases is marginal, while the potential for prejudice is substantial. Moreover, the burden is on the Government to demonstrate that this case should be consolidated with Boston Edison, and that burden has not been met.

### I. ENGC And BECO Are Seeking Non-Overlapping Damages Based On Different Timeframes

The Government's primary rationale for consolidation is that ENGC's and BECO's cases share "common issues of fact and law." Motion to Consolidate at 5. The two cases involve the same contract and same nuclear power facility. But the mere fact that ENGC's and BECO's cases involve the same contract and plant does not, by itself, satisfy the requirements of RCFC 42. On the contrary, it appears likely that the trials of ENGC's and BECO's damages claims will be substantively different in both fact and law. As an initial matter, the Government has already been found liable to ENGC for breach of the Standard Contract For Disposal Of Spent Nuclear Fuel And/Or High-Level Radioactive Waste ("Standard Contract") in this case. See 64 Fed. Cl.

336, 344 (2005). As the Court noted, the focus of ENGC's trial will be on the "measure of damages" with "the likelihood that Entergy's damages will continue beyond 2010." Id. at 345. By contrast, this Court denied BECO's motion for summary judgment on liability since the time of the Government's breach has not yet been established. Boston Edison, 64 Fed. Cl. 167, 188 (2005).

The Government repeatedly suggests that this case and Boston Edison "share the same factual basis" or "predicate." E.g., Motion to Consolidate at 8 and 12. However, the central issues to be litigated – the damages incurred by BECO on the one hand, and ENGC on the other hand – bear little resemblance. ENGC's damages claim will primarily be based on the Department of Energy's ("DOE") continuing failure to accept any SNF from the Pilgrim Nuclear Power Station ("Pilgrim"). These damages will continue to accumulate as long as DOE fails to perform its Standard Contract obligations, since ENGC will need to take actions in the future to mitigate the effects of DOE's breach. On the other hand, BECO's damages – to the extent that they are recoverable – have already been incurred and are based solely on past events that largely relate to the alleged diminution in value of Pilgrim. A comparison of the two plaintiffs' damages claims, as alleged in their complaints, shows that the underlying theories of recovery are vastly different.

**A. ENGC's Damages Are Largely Based On DOE's Continued Nonperformance**

In its complaint, ENGC has alleged that as a result of the Government's breach, ENGC "has incurred and *will continue to incur* other substantial damages, including but not limited to regulatory costs associated with efforts to ensure sufficient on-site storage capacity or alternative off-site storage capacity to permit continued operation of its nuclear plant." Complaint ¶ 21 (emphasis added). Moreover, the "rate at which ENGC's damages will continue to accrue is

dependent upon various factors including but not limited to when DOE commences performance of its contractual obligations . . . ." Id. ¶ 25.

In other words, the magnitude of ENGC's damages will largely be based upon whether DOE begins SNF acceptance from utilities in 2010, 2015, or at an even later date. Additionally, as ENGC has previously noted, the costs that ENGC has incurred as a result of the Government's breach thus far include the insertion of new racks into the spent fuel pool at Pilgrim in 1999-2000 "to allow the plant to accommodate spent fuel assemblies DOE would otherwise pick up." Plaintiff's Reply In Support Of Its Motion For Summary Judgment On Liability And Response In Opposition To Defendant's Cross-Motion For Summary Judgment On Liability at 11 (Sept. 13, 2004). Noticeably absent from ENGC's complaint are any allegations regarding the circumstances surrounding its purchase of Pilgrim from BECO, which (as explained below) is the main factual issue underlying the diminution in value damages alleged in Boston Edison. By contrast, any consideration of BECO's damages appears to require a determination as to the effect (if any) of DOE's breach on the Pilgrim sales transaction. Consideration of such issues is neither necessary nor relevant to the trial of ENGC's damages in this case.

**B. BECO's Damages Are Based On Past Events**

According to BECO's amended complaint, its damages claims are limited to the alleged "diminution of the market value of Pilgrim" and "increased costs incurred by Boston Edison to store and maintain SNF." BECO's Amended Complaint (attached hereto at Exhibit A[2]) ¶ 71 (Jan. 13, 2004). These claims appear largely based on the allegations that: (1) the Government's

[2] Neither Exhibit A nor Exhibit B (referenced in Section II *infra*) are attached to this Response, since they each consist of an electronic file greater than 2 megabytes and RCFC General Order 42A ¶ 4 prohibits the filing of documents exceeding 2 megabytes in size "[u]nless otherwise ordered by the assigned judge." For files that would exceed this size limitation, RCFC General Order 42A ¶ 4 requires ENGC "to seek appropriate relief" from the Court. Hence, Exhibits A and B have been attached to a "Motion For Leave To File Exhibits Using Electronic Files Exceeding 2 Megabytes," which motion is filed contemporaneously with this Response.

breach of the Standard Contract significantly diminished the value of Pilgrim since prospective purchasers of the plant accounted for the increased risks brought about by DOE's nonperformance, id. ¶¶ 58, 61; 2) ENGC purchased Pilgrim from BECO at a discounted price, having factored in the future costs of constructing and operating a dry cask storage facility at the plant, id. ¶¶ 62-66; and 3) had DOE performed its obligations under the Standard Contract, BECO would have realized the benefits of a more competitive process for the sale of Pilgrim, id. ¶ 60. These factual allegations, all of which would have occurred during the late 1990s, have no relevance to the scope or extent of the damages that ENGC has alleged and seeks in this case.

Other significant factual issues that have already been raised in the parties' summary judgment briefing in Boston Edison include DOE's 1997 suspension of the Delivery Commitment Schedule process and the costs that BECO incurred to re-rack the spent fuel pool at Pilgrim in the mid-1990s. Boston Edison, 64 Fed. Cl. at 172 n.7. Likewise, these factual issues pre-date ENGC's ownership of Pilgrim and have no relevance to ENGC's damages in this case.

### C. BECO's "Diminution In Value" Claim Has No Bearing On ENGC's Damages

There is also no merit to the Government's assertion that ENGC's payment of an allegedly "reduced" price to BECO when it purchased Pilgrim somehow constitutes partial "compensation" to ENGC for its breach of contract claim against the Government. Motion to Consolidate at 6. The suggestion that the Government should recoup from ENGC any damages that are awarded to BECO for its diminution in value claim, id. at 12-13, is equally flawed.

First, the Government has failed to cite any legal support for the proposition that a company which purchased private property on the open market could somehow be liable to the Government for any diminution in value of that property prior to the purchase, especially if the Government (and not the purchasing party) were responsible for the diminution in value. Second, to the extent that there were "risks" which allegedly reduced the perceived value of

Pilgrim when BECO was selling the plant in 1998-99 (e.g., "anticipated expense associated with storing SNF on-site indefinitely," BECO's Amended Complaint at ¶ 60), these risks apply equally to ENGC's ownership of the plant since the prospect of DOE accepting any SNF from Pilgrim in the near future is at least as unlikely today as it was 1998-99. Hence, the fact that ENGC currently operates Pilgrim with the same prospective risks that BECO faced hardly constitutes "compensation" (as the Government uses the term) for the Government's breach of the Standard Contract, regardless of the price that ENGC paid for the plant. Third, whether any one factor made a measurable difference in the price ENGC paid for Pilgrim is simply not an issue in ENGC's case against the Government, nor should resolution of that issue affect the measure of ENGC's breach of contract damages.

In short, consolidation of this case with Boston Edison risks validating the fabricated and legally unsupported connection between the diminution in value damages and storage costs prior to July 1999 that BECO may recover in its action, and any damages (i.e., additional storage costs after July 1999) that ENGC may recover in this case. As demonstrated above, the damages that ENGC has claimed and the damages that BECO has claimed are independent of one another and based on distinct timeframes and distinct damages theories. It would be prejudicial to ENGC for BECO's unrelated claims to serve as an artificial burden on ENGC's proof of damages. ENGC is entitled to recover any and all costs after July 1999 that would not have been incurred but for the Government's breach of the Standard Contract and that can be proved with "reasonable certainty." See Energy Capital Corp. v. United States, 302 F.3d 1314 (Fed. Cir. 2002) (affirming expectancy damages award in complex breach of contract case). Consolidation would also be

prejudicial to ENGC since it would unnecessarily increase ENGC's litigation costs by requiring its participation in a trial (i.e., BECO's) on issues that are irrelevant to its damages.[3]

## II. The Government's Other Reasons For Consolidation Are Not Unique To ENGC's Case, And This Court Has Repeatedly Declined To Consolidate The SNF Cases On These Grounds

The Government complains that absent consolidation, "there is the potential that the Court could determine different rates of acceptance, even though the same contract is at issue in two cases, leading to inconsistent judgments in the two cases." Motion to Consolidate at 9-10. In its prior consolidation efforts, the Government has also raised concerns about the risk of "inconsistent decisions" by this Court. As explained below, however, the mere possibility that various judges might reach allegedly inconsistent outcomes on the rate of SNF acceptance in the different SNF cases does not justify consolidation for ENGC with BECO here or with any other cases. Nonetheless, the Government has consistently posited an illusory (and at best, theoretical) fear that disparate rulings from this Court regarding DOE's SNF acceptance obligations would make it difficult to determine an individual utility's damages. See Defendant's Second Motion To Renew Its Motion To Consolidate (attached hereto as Exhibit B) at 7-8 (Jul. 29, 2003). The Government concludes that the determination of a "consistent and uniform contractual acceptance schedule" is necessary for the adjudication of each utility plaintiff's damages. Exhibit B at 8. These concerns are invalid for at least several reasons.[4]

---

[3] While it may be necessary for the Government to pursue some overlapping discovery from ENGC and BECO (e.g., depositions of the same witnesses), such discovery could readily be coordinated without formal consolidation of the cases. For example, in 2001 and 2002, the Government and multiple SNF plaintiffs engaged in coordinated discovery on SNF acceptance schedule issues, which discovery was completed without the consolidation of any cases. ENGC is prepared to participate in coordinated discovery with BECO, subject to the adoption of a reasonable plan and schedule for such discovery.

[4] As an initial matter, the Government has failed to demonstrate why a ruling on the acceptance rate, which would affect ENGC's damages to some extent, is even relevant to the adjudication of BECO's damages claim.

First, at least insofar as the SNF acceptance rate issues are concerned, no inconsistent decisions have yet been issued by the various trial judges which have considered the matter. Indeed, in each instance where this Court has ruled on the Government's motion for summary judgment on the acceptance rate, the Government's motion has been denied. See, e.g., Indiana Michigan Power Co. v. United States, 57 Fed. Cl. 88, 99-100 (2003); Commonwealth Edison Co. v. United States, 56 Fed. Cl. 652, 668 (2003). Second, the issue of whether or not DOE is contractually required to accept Greater-Than-Class-C ("GTCC") waste or failed fuel, Motion to Consolidate at 9-10, is irrelevant to the question of consolidation since ENGC has not made any allegations in its Complaint regarding DOE acceptance of these materials. Rather, ENGC seeks damages resulting from DOE's failure to proceed with the timely acceptance of SNF. Third, the necessity for this Court to determine a SNF acceptance schedule for ENGC that is consistent with the schedule for BECO is itself a faulty premise since it is impossible now for DOE to accept SNF from BECO at Pilgrim, as BECO no longer owns the plant. Lastly, as the Federal Circuit has previously stated in the SNF litigation:

> [e]quitable adjustment of the contractual schedules for removal of the nuclear waste would provide virtually no basis for compensating [plaintiff] for any damages it may have sustained from the Department's failure to perform its contractual obligations. At present there are no schedules containing specific dates for disposing of the waste of particular companies. It is uncertain when they will be adopted and to what extent, if any, they will, or could effectively reflect the Department's breach of the contract.

Maine Yankee Atomic Power Co. v. United States, 224 F.3d 1336, 1342 (Fed. Cir. 2000). Indeed, the calculation of damages in the SNF cases does not require a "uniform contractual acceptance schedule" as the Government has suggested, but merely proof of a plaintiff's damages associated with DOE's breach that is held to the same "reasonable certainty" standard as the Federal Circuit routinely follows in other breach of contract cases. See, e.g., Energy Capital Corp., 302 F.3d at 1325.

Specifically, a SNF plaintiff's damages are generally measured by taking the difference between: (1) costs the plaintiff has and will incur as a result of the Government's partial breach, and (2) costs the plaintiff would have incurred if DOE had fulfilled its obligations under the Standard Contract. Here, ENGC's damages claim will likely follow this same rubric. This process essentially entails a calculation of expectancy damages "that will place a party in as good a position as he or she would have been in had the breaching party fully performed." Wells Fargo Bank, N.A. v. United States, 88 F.3d 1012, 1021 (Fed. Cir. 1996) (citation omitted). To this end, ENGC only needs to show that enough of its SNF would have been removed so that it would have avoided additional SNF storage costs, had DOE performed its Standard Contract obligations. These factual issues, when resolved, are sufficient for the Court to render a judgment on damages. While determination of an appropriate acceptance rate may impact a given utility's damages claim, the same could be said of a host of other factors. Hence, consolidation is especially inappropriate here because, as stated above, ENGC's demonstration of damages will certainly vary from BECO's. Even here, where the claims involve the same plant, an assessment of damages resulting from additional SNF storage will be different for ENGC and BECO since the extent to which dry storage is necessary at Pilgrim (as opposed to re-racking only) has changed over the years in light of DOE's continuing nonperformance.

## III. The Use Of RCFC 14 Summons and Notice Is Inappropriate Here Since The Government Has No "Contingent Claim" Against ENGC

In its previous attempts to consolidate the SNF cases, the Government requested that this Court issue a notice pursuant to 41 U.S.C. § 114(b) ("Section 114") to those Standard Contract holders who had not yet chosen to sue the Government. This issue has been briefed several times by other utility plaintiffs in their briefs against consolidation, and ENGC's grounds for opposing the Government's alternative motion are similar here.

The Government maintains that a RCFC 14(a) summons, pursuant to Section 114, is necessary to answer the "contingent claim of the United States for the recovery from ENGC of any monies that may be paid by the United States to BECO with respect to the transaction or matter which constitutes the subject matter of the pending suit against the United States." Motion to Consolidate at 12. As explained in Section I.C *supra*, however, BECO's damages claim has no bearing on ENGC and the Government has no "contingent claim" against ENGC. A summons issued under RCFC 14(a) is only appropriate "in situations where the government is seeking the recovery of a sum of money disbursed to the wrong party." Southern Cal. Edison Co. v. United States, 226 F.3d 1349, 1355 (Fed. Cir. 2000). Section 114(b) provides the procedural tools to bring in all "erroneously paid" parties, to assure that the Government may litigate its contingent claims against an erroneously over-paid party in the same proceeding initiated by an erroneously under-paid party. Id.

The use of RCFC 14(a) summons here for ENGC and BECO is flawed because the Government has mischaracterized any potential damages in Boston Edison as an erroneous payment of money already made to ENGC, based on a straightforward purchase of property between two private entities that did not directly involve the Government. The Government has failed to specify any legal grounds on which a contingent claim may be brought that would meet the requirements of Section 114. Thus far, the Government has only made unsupported assertions about how any damages that BECO may recover in its suit must somehow be connected to ENGC, based on the mere fact that BECO sold Pilgrim to ENGC at an allegedly reduced price. Just as importantly, unlike the court in Southern California Edison, this Court will not be apportioning damages among Standard Contract holders based on a set fund. SNF plaintiffs will recover any damage awards out of the Judgment Fund and, thus, the Government's

damages payment to one plaintiff is completely independent of and not contingent on another's. See Ala. Power Co. v. Dep't of Energy, 307 F.3d 1300, 1315 (11th Cir. 2002).

Moreover, even if ENGC were noticed as a third-party defendant in Boston Edison pursuant to RCFC 14(a)(1), it would not be bound by any adverse judgment since ENGC could not actually appeal such a judgment. See Penda Corp. v. United States, 44 F.3d 967, 971-73 (Fed. Cir. 1994). In Penda, the Federal Circuit denied standing to a RCFC 14(a)(1) third-party defendant that challenged the judgment that applied to the plaintiff and the Government, neither of which pursued an appeal. Penda, 44 F.3d at 972. The RCFC 14(a)(1) third-party defendant sought to appeal, because it feared that it would owe indemnification to the Government, or could potentially face a related suit brought by plaintiff in another court. Id. The Federal Circuit denied standing to appeal because the Court of Federal Claims' judgment involved an obligation between the Government and the plaintiff; it involved no obligation or claim by the third-party defendant. Id. The Federal Circuit concluded that "[i]t is axiomatic that a judgment is without preclusive effect against a party which lacks a right to appeal that judgment." Id. at 973. Here, a similar problem could arise. If ENGC were noticed as a third-party defendant in Boston Edison, under Penda no final judgment could be entered against ENGC since ENGC would not have standing to appeal any judgment against it.

Furthermore, the underlying rationale for using the notice procedures of RCFC 14(a)(1) is the "prevention of numerous proceedings and determinations on an identical set of facts" and the "furtherance of the conservation of judicial time and effort." Philadelphia Suburban Corp. v. United States, 211 Ct. Cl. 354, 355 (1976). However, if a noticed party such as ENGC will not be bound by the results of a consolidated proceeding, then the process will simply not conserve any judicial time or resources as the Government suggests. And since, in any event, the ENGC and BECO cases do not turn on "determinations on an identical set of facts," the purposes behind

RCFC 14(a)(1) notice procedures simply do not apply here. The Government's procedural maneuverings will only lead to additional expense and a waste of judicial resources.

**CONCLUSION**

For the reasons stated above, the Government has failed to meet the requirements of RCFC 42 and the Motion to Consolidate should be denied. The Government's alternative motion for issuance of a summons to ENGC in Boston Edison and to BECO in this case pursuant to RCFC 14(a) and for notice to ENGC and BECO pursuant to RCFC 14(b) should also be denied.

Dated: April 28, 2005

Respectfully submitted,

s/ Alex D. Tomaszczuk by s/ Jack Y. Chu
Alex D. Tomaszczuk
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
1650 Tysons Boulevard
McLean, VA 22102
(703) 770-7940
(703) 770-7901 (fax)

Counsel of Record for Plaintiff
Entergy Nuclear Generation Company

Of Counsel:

Jay E. Silberg
Daniel S. Herzfeld
Jack Y. Chu
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
2300 N Street, N.W.
Washington, D.C. 20037
(202) 663-8000
(202) 663-8007 (fax)