**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY | ) |
| CONNECTICUT YANKEE ATOMIC POWER COMPANY | ) |
| MAINE YANKEE ATOMIC POWER COMPANY | ) |
| FLORIDA POWER & LIGHT COMPANY | ) |
| NORTHERN STATES POWER COMPANY | ) Case Nos. 98-126[illegible] |
| DUKE POWER, A Division of DUKE ENERGY CORP. | ) 98-154C, 98-[illegible] |
| INDIANA MICHIGAN POWER COMPANY | ) 98-483C, 98-[illegible] |
| SACRAMENTO MUNICIPAL UTILITY DISTRICT | ) 98-485C, 98-[illegible] |
| SOUTHERN NUCLEAR OPERATING COMPANY, et al. | ) 98-488C, 98-[illegible] |
| COMMONWEALTH EDISON COMPANY | ) 98-621C, 99-[illegible] |
| BOSTON EDISON COMPANY | ) 00-440C, 00-[illegible] |
| GPU NUCLEAR, INCORPORATED | ) 00-703C, 01-[illegible] |
| WISCONSIN ELECTRIC POWER COMPANY | ) 01-116C, 01-[illegible] |
| POWER AUTHORITY OF THE STATE OF NEW YORK | ) 01-551C, 02-[illegible] |
| OMAHA PUBLIC POWER DISTRICT | ) 02-926C, 02-[illegible] |
| NEBRASKA PUBLIC POWER DISTRICT | ) |
| TENNESSEE VALLEY AUTHORITY | ) (Chief Judge [illegible] |
| PSEG NUCLEAR, LLC | ) |
| VERMONT YANKEE ATOMIC NUCLEAR CORP. | ) |
| DETROIT EDISON COMPANY | ) |
| CONSUMERS ENERGY COMPANY | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S SECOND MOTION TO RENEW ITS MOTION TO CONSOLIDATE**

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

OF COUNSEL:

JANE K. TAYLOR
MARTHA S. CROSLAND
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

KEVIN B. CRAWFORD
JOHN C. EKMAN
HEIDE L. HERRMANN
R. ALAN MILLER
STEFAN SHAIBANI
RUSSELL A. SHULTIS
SHARON SNYDER
VICTORIA L. STROHMEYER
MARIAN E. SULLIVAN
ELIZABETH A. THOMAS
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

July 29, 2003

HAROLD D. LESTER, JR
Assistant Director
Commercial Litigation Bra
Civil Division
Department of Justice
Attn: Classification Un
8th Floor
1100 L Street, N.W.
Washington, D.C. 2053
Tele: (202) 307-6288
Fax: (202) 514-8640

Attorneys for Defenda

## TABLE OF CONTENTS


PAGE(S)

DEFENDANT'S SECOND MOTION TO RENEW ITS MOTION TO CONSOLIDATE . . . . . 1

BACKGROUND . . . . . 3

DISCUSSION . . . . . 5

I. THE POSSIBILITY OF INCONSISTENT RULINGS AND THE BURDEN UPON THE GOVERNMENT RAISED BY INDIVIDUAL SCHEDULE PROCEEDINGS REQUIRES ACTION UPON THE GOVERNMENT'S MOTION TO CONSOLIDATE . . . . . 5

II. THE COURT SHOULD ACT NOW TO ENSURE THAT A CONSISTENT AND UNIFORM CONTRACTUAL ACCEPTANCE SCHEDULE IS APPLIED TO ALL OF THE STANDARD CONTRACT CASES PENDING BEFORE THIS COURT . . . . . 8

III. TO THE EXTENT THAT ANY TRIALS PROCEED IN THIS COURT TO DEFINE THE SNF ACCEPTANCE SCHEDULE TO BE READ INTO THE STANDARD CONTRACT, THE COURT SHOULD ORDER A SINGLE PROCEEDING INVOLVING ALL CONTRACT HOLDERS THAT RESOLVES THAT ISSUE UNIFORMLY FOR ALL PARTIES . . . . . 12

A. Any Trial Upon The Schedule For SNF Acceptance That Should Be Read Into The Standard Contract Should Involve All Plaintiffs In These Cases And Be Equally Binding Upon All Parties . . . . . 12

B. Regardless Of Whether The Court Consolidates The Cases Or Considers Them En Banc, Section 114(b) Notice Should Be Given To Other Potential Utility Plaintiffs . . . . . 14

CONCLUSION . . . . . 15

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

Dondi Props. Corp. v. Commerce S. & L. Association,
121 F.R.D. 284 (N.D. Tex. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Greer v. Skilcraft,
704 F. Supp. 1570 (D. Ala. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Milmark Services, Inc. v. United States,
731 F.2d 855 (Fed. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Phan v. Reno,
56 F. Supp. 2d 1149 (W.D. Wash. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States v. Anaya,
509 F. Supp. 289, 302 (S.D. Fla. 1980), aff'd sub nom.
United States v. Zayas-Morales, 685 F.2d 1272 (11th Cir. 1982) . . . . . . . . . . . . . . . . . . 11

United States v. Johnson,
682 F. Supp. 1033 (D. Mo. 1988), aff'd, 488 U.S. 361 (1989) . . . . . . . . . . . . . . . . . . 10

United States v. Zayas-Morales,
685 F.2d 1272 (11th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

**STATUTES AND REGULATIONS**

41 U.S.C. § 114(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

42 U.S.C. §§ 10101-10270 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

10 C.F.R. § 961.11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7

**MISCELLANEOUS**

13 C. Wright, A. Miller, & E. Cooper, Federal Practice & Procedure § 3505 (2d ed. 1984) . . . . 9

Restatement (Second) of Contracts § 211 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY | ) | |
| CONNECTICUT YANKEE ATOMIC POWER COMPANY | ) | |
| MAINE YANKEE ATOMIC POWER COMPANY | ) | |
| FLORIDA POWER & LIGHT COMPANY | ) | |
| NORTHERN STATES POWER COMPANY | ) | Case Nos. 98-126C, |
| DUKE POWER, A Division of DUKE ENERGY CORP. | ) | 98-154C, 98-474C, |
| INDIANA MICHIGAN POWER COMPANY | ) | 98-483C, 98-484C, |
| SACRAMENTO MUNICIPAL UTILITY DISTRICT | ) | 98-485C, 98-486C, |
| SOUTHERN NUCLEAR OPERATING COMPANY, et al. | ) | 98-488C, 98-614C, |
| COMMONWEALTH EDISON COMPANY | ) | 98-621C, 99-447C, |
| BOSTON EDISON COMPANY | ) | 00-440C, 00-697C, |
| GPU NUCLEAR, INCORPORATED | ) | 00-703C, 01-115C, |
| WISCONSIN ELECTRIC POWER COMPANY | ) | 01-116C, 01-249C. |
| POWER AUTHORITY OF THE STATE OF NEW YORK | ) | 01-551C, 02-898C, |
| OMAHA PUBLIC POWER DISTRICT | ) | 02-926C, 02-1894C |
| NEBRASKA PUBLIC POWER DISTRICT | ) | |
| TENNESSEE VALLEY AUTHORITY | ) | (Chief Judge Damich) |
| PSEG NUCLEAR, LLC, | ) | |
| VERMONT YANKEE ATOMIC NUCLEAR CORP. | ) | |
| DETROIT EDISON COMPANY | ) | |
| CONSUMERS ENERGY COMPANY | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S SECOND MOTION TO RENEW ITS MOTION TO CONSOLIDATE

Pursuant to the Court's order, dated April 16, 2003, the Government respectfully submits this motion[1] to the Chief Judge following the Court's decisions upon the Government's partial summary judgment motions by three of the four judges assigned to the "lead" or "accelerated"

[1] To the extent that RCFC 5.3 requires that we file an original and two copies of this motion in each of the 21 pending cases alleging breaches of the Standard Contract published at 10 C.F.R. § 961.11, we respectfully request that the Court waive that requirement as it relates to this motion.

cases: Commonwealth Edison Co. v. United States, No. 98-621C (Fed. Cl. June 10, 2003) (Hewitt, J.); Yankee Atomic Electric Co. v. United States, No. 98-126C (Fed. Cl. June 26, 2003); and Indiana Michigan Power Co. v. United States, No. 98-486C (Fed. Cl. June 27, 2003) (Hodges, J.). The parties are still awaiting decision upon the Government's motions in the fourth "lead" case, Florida Power & Light Co. v. United States, No. 98-483C (Fed. Cl.) (Sypolt, J.). Because the judges in the three cases in which decisions have been issued have indicated in their decisions an intention to proceed with trial proceedings, apparently without any further consolidation or coordination, and because the Court in the Commonwealth Edison case has already scheduled trial upon the common issues raised the Government's motion regarding the contractual schedule for spent nuclear fuel acceptance, the Government respectfully requests that the Court renew its consideration of the Government's pending motions to consolidate the spent nuclear fuel ("SNF") cases pending before the Court for the purposes of deciding schedule issues. Without action by the Court to consolidate these cases into a single proceeding, it appears likely that the Government will have to defend the 21 currently pending individual cases, all of which involve the same facts, the same legal issues, and the same Government witnesses, in duplicative and wasteful proceedings, with a serious likelihood of inconsistent judgments and obligations.[2] Moreover, individual proceedings to determine the schedule are inappropriate, given that the contract terms are identical across all of the plaintiffs' contracts.

---

2/ Interestingly, after repeatedly protesting that the cases were so different that consolidation could not occur, four of the remaining five "lead" plaintiffs, Yankee Atomic, Connecticut Yankee, Maine Yankee and Indiana Michigan, filed motions in their respective cases, asking the Court to consider as persuasive supplemental authority Judge Hewitt's decision in Commonwealth Edison. The Yankee plaintiffs, in fact, urged the Court to "adopt" Judge Hewitt's ruling.

## BACKGROUND

As the Court is aware, in response to the Government's previous motion to renew consideration of the Government's motion to reassign all of these cases to one judge, the Court issued a series of orders that culminated in the identification of a set of six "lead" cases in which the Government's partial summary judgment motions, which were pending in most of the SNF cases, would be decided. Order (Apr. 16, 2003). This order followed from the Court's order issued March 7, 2003, which required the parties to identify all of the cases in which each of the Government's partial summary judgment motions were pending and "present[] fairly and completely all the issues and arguments in the other similar pending motions." Order, at 2 (March 7, 2003). In the March 7, 2003 order, the Court also noted that "[i]nterlocutory decisions on one or more motions may be certified for appeal by permission to the United States Court of Appeals for the Federal Circuit." Id. Further consideration of the Government's motion to renew consideration of the motion to consolidate the cases before a single judge was stayed until decisions on the pending motions were reached in the six "lead" cases. Order, at 2 (Apr. 16, 2003).

The Court in the Commonwealth Edison and Yankee Atomic cases has ordered that the matters raised in the Government's rate of SNF acceptance motion will be the subject of a trial in each case and that the Court will identify a rate of SNF acceptance for inclusion in the Standard Contract through that trial, and the Court in Commonwealth Edison, by order dated July 22, 2003, has scheduled trial dates for that trial. The Court in Indiana Michigan has granted summary judgment to the plaintiff in that case upon a rate of SNF acceptance that the plaintiff in that case proposed. In addition, the Court in Yankee Atomic will also apparently conduct a trial

upon the issues raised in the Government's motion relating to Greater-Than-Class-C radioactive waste, while the Court in Commonwealth Edison and Indiana Michigan declared the Government's motion not to be ripe. Because these rulings create a significant procedural problem for these cases that risks significantly inconsistent determinations on the merits, the Government respectfully requests that the Court rule upon the pending motion to consolidate and, further, suggests another mechanism for a uniform decision in these cases upon common issues for the Court's consideration.

Further, the fact that there are now decisions in two of the "lead" cases finding that the Court must resolve factual issues relating to the issues raised in the Government's partial summary judgment motions creates a dilemma for the other cases that have been stayed. Because we respectfully disagree with the Court's conclusions that there are factual issues relating to the rate and schedule of SNF acceptance that require resolution, we cannot stipulate to apply the rationale of the Court's existing decisions to the remaining SNF cases pending in this Court. Accordingly, absent some binding resolution of these issues by the appellate court, the other judges of this Court either will have to decide the Government's motions or will have to stay their cases until the "lead" cases are complete, including appellate review. Already, several plaintiffs have filed motions in their SNF cases, seeking to dissolve the stays in those cases and to have the judges assigned to those cases decide the Government's motions. To the extent that the Court believes it necessary to have the other judges of this Court assigned to SNF cases decide the Government's motions, we respectfully suggest that the Court could decide those motions in an en banc decision of the Court, with a single Court decision involving all of the remaining judges assigned to these cases, including any dissenting opinions that may arise

through disagreements between the judges. Based upon that decision, the cases could all proceed, either through an interlocutory appeal to the appellate court or through either a consolidated or an en banc proceeding to resolve any factual issues related to the schedule terms of the Standard Contract.

## DISCUSSION

### I. THE POSSIBILITY OF INCONSISTENT RULINGS AND THE BURDEN UPON THE GOVERNMENT RAISED BY INDIVIDUAL SCHEDULE PROCEEDINGS REQUIRES ACTION UPON THE GOVERNMENT'S MOTION TO CONSOLIDATE

As we have previously explained in our still-pending motions to consolidate and to renew the Court's consideration of the motion to consolidate, the relevant terms of the Standard Contracts in all of the SNF cases are the same. The schedule for SNF acceptance in all of the Standard Contracts was to be determined by reference to the relative age of all contract holders' SNF, with "oldest fuel first" acceptance allocations. Further, the rate of SNF acceptance upon which the acceptance schedule would be based would be the same for all Standard Contract holders.

Here, it appears that the Court, at least to the extent that the decisions in the Commonwealth Edison and Yankee Atomic cases are adopted by the remainder of the Court, apparently anticipates numerous separate trials to determine what the Court in Commonwealth Edison and Yankee Atomic has determined is a factual issue: the meaning of the acceptance schedule term contained in the Standard Contract and/or the acceptance schedule that the Court will import into the Standard Contract. To establish the schedule terms of the Standard Contract,

the same witnesses will have to testify repeatedly in numerous trials before different judges.[3] Moreover, based upon the utility plaintiffs' responses to the Government's motions, that the utility plaintiffs will rely upon the same documentary evidence to present their schedule arguments. The specter of dozens of individual trials presenting the same evidence to determine the schedule for waste acceptance prompted the Government's original motion to consolidate. Because that specter is now becoming reality, the Government requests that the Court act upon that motion.

Further, the relevant terms of every plaintiff's Standard Contract are exactly the same and must be interpreted in the same manner. See Restatement (Second) of Contracts § 211 (1981) (if "a party to an agreement signs or otherwise manifests assent to a writing and has reason to believe that like writings are regularly used to embody terms of agreements of the same type," such "a writing is interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing"). Accordingly, it would be both inefficient and inconsistent with the concept behind the creation of the Standard Contract for the Court to engage in numerous individual trials to define the Standard Contract's schedule terms. In light of Judge Hodges' decision granting the plaintiff's summary judgment motion regarding the acceptance rate in Indiana Michigan, it appears likely

---

[3] In conversations with opposing counsel in Commonwealth Edison to negotiate the schedule of further proceedings in that case, Government counsel has learned that additional issues already throughly explored in the Yankee Atomic case, such as failed fuel and cooling time, will become issues in Commonwealth Edison. Further, counsel for Commonwealth Edison has indicated that it intends to renew discovery on the same matters upon which the plainitffs in Yankee Atomic, Connecticut Yankee, and Maine Yankee have already completed their discovery. These are additional issues that should be decided in any consolidated proceeding to avoid needless repetition of the same discovery and testimony.

that there will be inconsistencies in the acceptance rates that the various judges place into the Standard Contract.

Moreover, even Judge Hodges' decision regarding the acceptance rate does not establish a schedule of SNF acceptance.[4] As the Court is aware, the Government was obligated to begin acceptance of SNF on January 31, 1998, pursuant to the Nuclear Waste Policy Act ("NWPA"), 42 U.S.C. §§ 10101-10270, and the terms of the Standard Contract, published at 10 C.F.R. § 961.11. The NWPA and the Standard Contract clearly indicate that the contract holders are to bear the costs of such storage until the Government accepts their SNF for disposal. Moreover, the Standard Contract clearly contemplated that the acceptance of SNF would be based upon the age of the SNF, across all of the contract holders. To determine damages, the Court must determine the scope of the Government's obligation to accept SNF (that is, to establish a schedule of acceptance) so that the parties may calculate the damages flowing to the contract holders from the failure to meet that obligation. To establish this schedule, the Court needs to determine the acceptance rate and then apply it against the priority ranking, the queue of utility fuel discharge. For example, if the Court determined that the annual rate of acceptance is 3,000 MTU, that rate would have to be applied against the acceptance queue which has been created based upon discharge information. This exercise will result in the schedule of acceptance from each utility by year, expressed in amount of MTU per year. Based upon this schedule, the Court and the parties will know the total amount that the Government was to have accepted from each utility

---

[4] The Government anticipates that it will file a motion for reconsideration of Judge Hodges' ruling upon plaintiffs' cross-motion for summary judgment in Indiana-Michigan. As will be explained in that pleading, the plaintiff failed to present sufficient undisputed evidence in support of a 3,000 MTU acceptance rate.

within a specific time period. Because DOE has never published any acceptance allocations for individual utilities or contract holders based upon the 3,000 MTU rate that the Court identified in its summary judgment decision, there is no pre-existing published "schedule" that identifies or provides these allocations based upon that rate of acceptance. Accordingly, if the Court were to grant summary judgment for the other utility plaintiffs in cases in which a cross-motion has been filed, the schedule of SNF acceptance would still need to be determined by the Court, upon presentation of evidence by the parties. Until the scope of this obligation is determined, the parties cannot efficiently turn to an analysis of specific damages accruing to an individual utility.

## II. THE COURT SHOULD ACT NOW TO ENSURE THAT A CONSISTENT AND UNIFORM CONTRACTUAL ACCEPTANCE SCHEDULE IS APPLIED TO ALL OF THE STANDARD CONTRACT CASES PENDING BEFORE THIS COURT

Because of the substantial risk that inconsistent acceptance schedules will be read into the Standard Contract, and because of the inconsistent contractual obligations that those inconsistent decisions will impose upon the Department of Energy, the Court should act now to consolidate these cases to allow for a consolidated and uniform decision regarding the SNF acceptance schedule to be read into the Standard Contract. As we have established in our prior motions to consolidate and to renew the Court's consideration of our motion to consolidate, consolidation is necessary to eliminate the strong likelihood of these inconsistent obligations. Although the plaintiffs have repeatedly stated that any inconsistencies in the Court's decisions would merely create inconsistent monetary obligations to different plaintiffs, the inconsistent decisions would also possibly impose inconsistent performance obligations upon the Department of Energy when it begins SNF acceptance. That is, through application of the doctrine of collateral estoppel, the

various plaintiffs could attempt to hold DOE to differing and inconsistent performance requirements, with which it may be impossible for DOE to comply. To eliminate these incredible difficulties, the Court should act upon our motion to consolidate immediately.

To the extent that, as the Court has previously expressed, the Court is concerned that consolidation would eliminate individual judges' control of the cases that are assigned to them, the Court could, alternatively, conduct an en banc proceeding that would resolve the acceptance schedule issues in a consistent and uniform manner in all of the cases pending before this Court. At least with regard to Federal district courts, "the statutes do not forbid, and some districts on occasion follow, the practice of having all of the judges of the court sit en banc in important matters or of designating a panel of several judges, but fewer than all, to establish uniformity within the district on recurring questions." 13 C. Wright, A. Miller, & E. Cooper, Federal Practice & Procedure § 3505, at 17-18 (2d ed. 1984). For example, in Phan v. Reno, 56 F. Supp. 2d 1149 (W.D. Wash. 1999), the district court engaged in an en banc proceeding to consider of more than 100 habeas corpus petitions, finding that, "[d]ue to the great number of cases currently pending in this district that raise the same issue . . ., we recognize the need to adopt a consistent legal framework to guide our individual consideration of these petitions." Id. at 1151.

In fact, the United States Court of Appeals for the Eleventh Circuit in United States v. Zayas-Morales, 685 F.2d 1272 (11th Cir. 1982), expressly commended a district court for employing an en banc trial court proceeding. In that case, the Federal district court was faced with 84 motions to dismiss indictments charging defendants with transporting illegal aliens. Although the Eleventh Circuit recognized that the en banc procedure that the district court had employed was "novel," the district court was "[f]aced with a multiplicity of motions to dismiss

the indictments in these cases and the potential for independently rendering differing opinions." Id. at 1275. The Eleventh Circuit found that "[t]he identify of facts and the common nuclear issue created the atmosphere for implemental of this unique procedure." Id. It further found that, "[b]y ruling on these cases simultaneously, the District Court was able to insure uniformity and intracourt comity, and at the same time avoid any unnecessary duplication of judicial effort." Id. at 1275-76. The appellate court "add[ed] [its] approval and commend[ed] the judges of the Southern District [of Florida] for the innovative manner in which they handled this massive case." Id. at 1276.

Here, the commonality of facts and legal issues surrounding these cases is indisputable. All of the relevant provisions of the 76 Standard Contracts that various nuclear utilities are identical. The terms of all of those Standard Contracts were promulgated in the same manner – through notice-and-comment rulemaking – and should all be interpreted in a uniform and consistent manner. See Restatement (Second) of Contracts § 211 (1981). The interactions between DOE and the nuclear industry as a whole led to the promulgation of the contract. The witnesses who will testify about the development of the Standard Contract and about the purpose of the various rates that DOE has published are the same in every case pending before this Court. There is no reason that this Court, pursuant to its authority under Rules 1 and 42 of the Rules of this Court, could not engage in the same type of en banc proceeding to resolve identical issues in different cases in which Federal district courts sometimes engage. See, e.g., Greer v. Skilcraft, 704 F. Supp. 1570 (D. Ala. 1989) (deciding 150 cases en banc, finding it "desirable for the basic issues to be considered and resolved jointly by all of the judges of this court to whom civil cases are regularly assigned"); United States v. Johnson, 682 F. Supp. 1033 (D. Mo. 1988) (decision of

district court judge regarding sentencing commission issues in which three other district court judges joined, followed by dissenting opinion from another district court judge), aff'd, 488 U.S. 361 (1989); Dondi Props. Corp. v. Commerce S. & L. Ass'n, 121 F.R.D. 284, 285 (N.D. Tex. 1988) ("[w]e sit en banc to adopt standards of litigation conduct for attorneys appearing in civil actions in the Northern District of Texas").

Absent consolidation of the cases before a single judge, the Court should convene an en banc proceeding for the purposes of determining an acceptance schedule. Through that proceeding, the Court, as a uniform whole, could resolve the Government's pending summary judgment motions in the remaining cases that were not selected as "lead" or "accelerated" cases for purposes of the summary judgment motion decisions. In previous decisions from district courts sitting en banc, the district court, either as a whole or as a panel of interested judges, has issued a single combined majority opinion that, when warranted, has included any dissenting opinions. See, e.g., United States v. Anaya, 509 F. Supp. 289, 302 (S.D. Fla. 1980) (district court en banc opinion with dissenting opinion), aff'd sub nom. United States v. Zayas-Morales, 685 F.2d 1272 (11th Cir. 1982). There is no reason that this Court cannot engage in a similar procedure to resolve the Government's pending motions for partial summary judgment in all of the remaining cases. However, regardless of the mechanism that the Court uses to resolve the schedule issues in these cases, we respectfully request that the Court act expeditiously to invoke a procedural mechanism that will allow for a uniform resolution of the schedule issues that will not create inconsistent obligations and liabilities upon DOE.

## III. TO THE EXTENT THAT ANY TRIALS PROCEED IN THIS COURT TO DEFINE THE SNF ACCEPTANCE SCHEDULE TO BE READ INTO THE STANDARD CONTRACT, THE COURT SHOULD ORDER A SINGLE PROCEEDING INVOLVING ALL CONTRACT HOLDERS THAT RESOLVES THAT ISSUE UNIFORMLY FOR ALL PARTIES

### A. Any Trial Upon The Schedule For SNF Acceptance That Should Be Read Into The Standard Contract Should Involve All Plaintiffs In These Cases And Be Equally Binding Upon All Parties

The intention of at least two judges of this Court to proceed to individual trials regarding schedule issues, including the rate of SNF acceptance that the Standard Contract requires DOE to satisfy, alters the course of proceedings identified in the Court's April 16, 2003 order, which clearly indicated a recognition by the Court that it was appropriate to continue the consolidation or coordination of these cases given the common factual and legal issues. In keeping with the intentions of the Court's previous orders, and to avoid the possibility of further inconsistent results and the need for individual trials on the same issue with the same witnesses and the same documents, the Government requests that the Court consolidate the cases for determining the schedule of acceptance against which damages will be measured. Alternatively, assuming that the Court as a whole were to decide that the schedule issues, including the rate of SNF acceptance, are factual issues that need resolution through a trial, the Court could invoke the same type of en banc proceeding previously discussed to resolve those factual issues, allowing for a uniform factual result. As we have discussed in our prior filings and during prior status conferences with the Court, if different judges issue different factual findings after trial regarding the SNF acceptance schedule to be read into the Standard Contract, the appellate court would be in a difficult position in reviewing and attempting to create uniformity in contract interpretation on appeal, given that the appellate court's standard for reviewing factual findings on appeal is

very limited, and, assuming that different judges interpret the same factual evidence and testimony in different ways based upon conflicting credibility findings, the appellate court might find it difficult to resolve those inconsistencies or to eliminate inconsistent obligations and liabilities generated by the inconsistent factual findings. See Milmark Services, Inc. v. United States, 731 F.2d 855, 857 (Fed. Cir. 1984) (appellate court reviews factual findings only to determine if "clearly erroneous").

To eliminate the strong possibility of inconsistent factual findings, obligations, and liabilities, and to preclude the need for repetitive duplicative proceedings in which the same witnesses will testify about the same matters based upon the same documentary evidence, we respectfully request that the Court devise a means by which any trial upon the schedule issues proceeds in a uniform and consolidated proceeding, either with one judge acting as the representative for the Court or in an en banc proceeding where several judges serve that function. Any such procedure should not delay proceedings in these cases, but should allow for the swift resolution of the schedule issues, followed by separate proceedings in individual cases regarding individual plaintiffs' specific damages arising from that previously determined acceptance schedule. To preclude delays in these cases, the Government believes that the Court could conduct a consolidated or en banc proceeding on the following schedule:

Proposed Schedule For Coordinated Trial On Schedule Issues:

| | |
|---|---|
| Conclude Discovery on Acceptance Schedule Issues[5] | August 2003-January 2004 |

---

[5] Given the extensive depositions that the utility plaintiffs undertook, both in the coordinated discovery proceedings and the Yankee cases, it is unclear what further discovery the utility plaintiffs would need prior to a trial on schedule.

| | |
|---|---|
| Pretrial Filings | |
| Meeting of Counsel | January 28, 2004 |
| Plaintiff's Memorandum of Fact and Law | February 11, 2004 |
| Defendant's Memorandum of Fact and Law | March 11, 2004 |
| Motion In Limine Deadline | March 11, 2004 |
| Pre-Trial Conference | April 1, 2004 |
| Consolidated Trial on Schedule Issues | April 2004 |

Once the acceptance schedule is determined, the cases may be returned to the individual judges for a determination of damages owed to each plaintiff based upon the Government's failure to accept the amount of waste from each plaintiff based upon the established schedule. Absent such a consolidated or en banc proceeding, each judge will have to determine the schedule after reviewing the same evidence in each case prior to assessing damages, as the judges assigned to the Commonwealth Edison and Yankee Atomic cases have indicated is presently likely to occur.[6]

B. Regardless Of Whether The Court Consolidates The Cases Or Considers Them En Banc, Section 114(b) Notice Should Be Given To Other Potential Utility Plaintiffs

The Government also respectfully renews its request that notice be provided to other potential utility plaintiffs, pursuant to 41 U.S.C. § 114(b), to ensure that any decision reached by the Court in a consolidated schedule trial is binding upon all claimants, both present and future. As detailed in our motion to renew, DOE entered into approximately 76 Standard Contracts, and only approximately 23 of those contracts are currently at issue in cases pending before this Court.

[6] Another mechanism through which the Court could resolve the SNF acceptance schedule issues in a uniform proceeding would be to select one case in which the schedule issues have been identified as factual in nature and, in that case, to issue notices pursuant to 41 U.S.C. § 114(b) to all Standard Contract holders, including the plaintiffs in this Court. In the trial of that selected case, the Court could resolve the acceptance schedule issue for all contract holders. The provisions of 41 U.S.C. § 114(b) have been discussed in detail in our pending motions to consolidate and to renew and are further discussed below.

The holders of the remaining approximately 53 Standard Contracts have yet to file suit, although we understand from industry reports that most, if not all, of these contract holders are expected to file complaints by January 31, 2004 (six years from the January 31, 1998 acceptance date in the Standard Contract and the Nuclear Waste Policy Act). The notice would be given to these entities and would not unnecessarily delay the litigation, given the apparent attention that the entire nuclear energy industry is devoting to these suits. Because we have previously discussed the provisions of 41 U.S.C. § 114(b) and the benefits of issuing notices pursuant to that statute in these cases, we respectfully refer the Court to those discussions in our motions to consolidate and to renew. For the reasons explained in those motions, the Court should issue those notices.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court renew its consideration of the Government's motion to consolidate.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-6288
Fax: (202) 514-8640

OF COUNSEL:

JANE K. TAYLOR
MARTHA S. CROSLAND
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

KEVIN B. CRAWFORD
JOHN C. EKMAN
HEIDE L. HERRMANN
R. ALAN MILLER
STEFAN SHAIBANI
RUSSELL A. SHULTIS
SHARON SNYDER
VICTORIA L. STROHMEYER
MARIAN E. SULLIVAN
ELIZABETH A. THOMAS
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

July 29, 2003

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 29th day of July, 2003, I caused to be served by hand or by overnight courier (Federal Express, for next-business-day delivery) copies of "DEFENDANT'S SECOND MOTION TO RENEW ITS MOTION TO CONSOLIDATE," addressed as follows:

Counsel for:
Boston Edison Co. v. United States, No. 99-447C (Fed. Cl.) (Allegra, J.);
Detroit Edison Co. v. United States, No. 02-926C (Fed. Cl.) (Miller, J.);
Duke Power Co. v. United States, No. 98-485C (Fed. Cl.) (Sypolt, J.);
Florida Light & Power Co. v. United States, No. 98-483C (Fed. Cl.) (Hewitt, J.);
GPU Nuclear, Inc. v. United States, No. 00-440C (Fed. Cl.) (Bush, J.);
Indiana Michigan Power Co. v. United States, No. 98-429C (Fed. Cl.) (Hodges, J.);
Nebraska Public Power District v. United States, No. 01-116C (Sypolt, J.);
Northern States Power Co. v. United States, No. 98-484C (Fed. Cl.) (Wiese, J.);
Omaha Public Power District v. United States, No. 01-115C (Fed. Cl.) (Bush, J.);
PSEG Nuclear LLC v. United States, No. 01-551C (Fed. Cl.) (Sypolt, J.);
Power Authority of the State of New York v. United States, No. 00-703C (Fed. Cl.) (Damich, J.); and,
Vermont Yankee Nuclear Power Authority v. United States, No. 02-898C (Fed. Cl.) (Hodges, J.):

ALEX D. TOMASZCZUK
Shaw Pittman
1650 Tysons Boulevard
McLean, Virginia 22102-4859

Counsel for:
Connecticut Yankee Atomic Power Co. v. United States, No. 98-154C (Fed. Cl.) (Merow, S.J.);
Maine Yankee Atomic Power Co. v. United States, No. 98-474C (Fed. Cl.) (Merow, S.J.); and
Yankee Atomic Electric Co. v. United States, No. 98-126C (Fed. Cl.) (Merow, S.J.):

JERRY STOUCK
Spriggs & Hollingsworth
1350 I Street, N.W.
Ninth Floor
Washington, D.C. 20005-3305

Counsel for:
Sacramento Municipal Irrigation District v. United States, No. 98-488C (Fed. Cl.) (Sypolt, J.):

MELVIN C. GARBOW
Arnold & Porter
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206

Counsel for:
Southern Nuclear Operating Co. v. United States, No. 98-614C) (Fed. Cl.) (Merow, S.J.):

M. STANFORD BLANTON
Balch & Bingham LLP
1710 Sixth Avenue North
Birmingham, Alabama 35203

Counsel for:
Wisconsin Electric Power Co. v. United States, No. 00-697C (Fed. Cl.) (Merow, S.J.):

RICHARD W. OEHLER
Perkins Coie LLP
1201 Third Avenue
40th Floor
Seattle, Washington 98101-3099

Counsel for:
Commonwealth Edison Co. v. United States, No. 98-621C (Hewitt, J.):

DAVID A. HANDZO
Jenner & Block
601 Thirteenth Street, N.W.
Suite 1200 South
Washington, D.C. 20005

Counsel for:
Tennessee Valley Authority v. United States, No. 01-249C (Bruggink, J.)

PETER K. SHEA
Office of the General Counsel
Tennessee Valley Authority
400 West Summit Hill Drive
Knoxville, Tennessee 37902-1401

Counsel for:
Consumers Energy Co. v. United States, No. 02-1894C (Damich, C.J.)

THOMAS O. MASON
Williams, Mullen, Clark & Dobbins
8270 Greensboro Drive, Suite 700
McLean, Virginia 22102

Harold D. Foster Jr.