IN THE UNITED STATES COURT OF FEDERAL CLAIMS

NORTHERN STATES POWER COMPANY, )
Plaintiff,) Case No.
v. ) 98-484C
THE UNITED STATES, )
Defendant.)

National Courts Building
717 Madison Place NW
Washington, D.C.

Monday, December 11, 2006
Volume 19

The parties met, pursuant to the notice of the Judge, at 10:28 a.m.

BEFORE: THE HONORABLE JOHN P. WIESE

certainly belies the government's argument that the DCSes were this binding vehicle in which DOE was going to perform and utilities were bound. Mr. Brownstein, the second DOE employee whose testimony we would seek to have admitted -- and all of these witnesses, by the way, their testimony would qualify as admissions of the party opponent under the federal rules.

Mr. Brownstein specifically testified that the ACRs, the annual capacity reports, were binding on no one, that is, not binding on the Department of Energy and not binding on the utilities, and also to the effect that the DCSes were for planning purposes only. And Ms. Slater-Thompson's testimony deals with that latter issue, namely, that the DCSes were for planning purposes only.

So in summary, Your Honor, this set of admissions deals with the propriety of the 3000 metric ton rate, why it was adopted, and the nonbinding nature of the DCSes, which the deputy director of the very office that was responsible for these treated as "administrivia."



THE COURT: Let me -- I'm sorry, Ms. Sullivan.

MS. SULLIVAN: I just wanted an opportunity to respond to Mr. Tomaszczuk's explanation of what the designations may or may not say, but, please, Your Honor.

THE COURT: No, by all means.

MS. SULLIVAN: Good afternoon, Your Honor. It's good to see you.

THE COURT: Good afternoon, Ms. Sullivan.

MS. SULLIVAN: I am the one who has been responsible for responding to the deposition designations.

THE COURT: Mr. Lo Re said you would be doing that.

MS. SULLIVAN: So thank you, Your Honor. First of all, with regard to Mr. Barrett's testimony, the extent of his deposition, the designations that have been made by Northern States concern the 3000 MTU rate, Mr. Barrett's opinion that that's a reasonable design rate for a repository, but very clearly, in our counterdesignations, establish that Mr. Barrett was not -- the 3000



MTU design rate was established before Mr. Barrett joined the program in 1985.

So there's no foundation for any statements that he may have made with regard to what he understood about contract formation, et cetera. With regard to Mr. Barrett's statements about the DCS process and that being administrivia and that that belies any testimony that the DCSes have some contractual significance, first of all, the contractual significance is a matter for the Court to decide, as we discussed during Mr. Pollog's testimony and others.

But also, as our counterdesignations indicate and I think also as the deposition designations indicate from Northern States, Mr. Barrett testified extensively about how his focus when he became acting director in 1993 was really to get the program going. The contractual matters, he left to others. His focus was their obligation to have a facility operating in 1998. M.

R. Barrett did use the word "administrivia." That kind of indicates Mr. Barrett's character, and I think, and the



way he speaks, frankly, but it certainly does not indicate -- it does not go against any testimony that the Court has heard with regard to the contractual significance of the DCS process, as outlined in the contract.

With regard to Mr. Brownstein and Ms. Slater, Your Honor, we continue to have our standing objection that Plaintiffs have not met their burden under 801(d)(2) to establish the scope of Mr. Brownstein's and Ms. Slater's, the matters that they were employed on, the testimony designated falls within those matters.

In particular, for Mr. Brownstein, there's some designations with regard to the MRS, and it's not clear at all that Mr. Brownstein had any knowledge or responsibility for activities related to the MRS. We would object on that basis. With regard to the ACRs and whether they're binding, we've never contended that the ACRs themselves are binding.

I think it says in the contract that they're for planning purposes. However, they are part of a process, and the designation of

Mr. Brownstein's testimony with regard to DCSes, he said that they were for planning purposes, not for planning purposes only. We have some counterdesignations that put into further context what Mr. Brownstein understood as to how the DCSes fit within that contractual mechanism.

Finally, with regard to Ms. Slater and the DCSes being for planning purposes only, I think, again, that that's reading too much into the testimony that's been designated. We counterdesignated some additional testimony that provides a further and better understanding of how Ms. Slater viewed the DCSes in that contractual mechanism and how they fit within the DCSes and how they led to the FDSes.

And, Your Honor, and all of this goes to -- I think you can see our theme, that these designations, they're taking very small snippets out of very large deposition transcripts. Mr. Barrett's deposition, I believe, went on for a total of seven days, and we have pieces that are taken -- in fact, some of our objections go to completeness, that we



have incomplete answers or incomplete questions.

And it's very difficult for the Court to really discern the context for the discussion. We've tried our best with counterdesignations, but the statements that have been designated are completely out of context. Thank you, Your Honor.

THE COURT: Thank you, Ms. Sullivan. Mr. Tomaszczuk, let me give you my reaction to the proposed designations. On the question of the acceptance rate, the 3000 metric tons uranium, I think that what we heard from Mr. Morgan, and in particular, what we see recited in the early mission plan statements gives the Court all that it needs in respect to how DOE viewed this program, at least before it began to see any impediments to performance.

And I don't see that Mr. Barrett can really enlarge that testimony in any respect, that is to say, what we see recited in the mission plan statements. And I think it's fair to say that had there been no obstacles imposed to DOE's performance, obstacles in the nature of legislative recalcitrance, that the rate to



which DOE would have ramped up to would have been 3000 metric tons uranium.

So I don't see that I need, or that you, more particularly, can really profit from whatever you believe Mr. Barrett might say on that subject. Now, with respect to the DCS process, it's really a legal question, one the Court must decide, and that is, what is the contractual significance of the DCS process? Does it generate a commitment that's binding in the manner that Mr. Zabransky thought it did, or are these planning documents and only that, which DOE is free to ignore, as it in fact did ultimately?

There is really no testimony, no matter how on point, that I could endorse as accurately and fairly stating what this contract contends when it sets out the mechanism by which the rate of acceptance is defined. This has to be a question that the Court must resolve for itself. Everybody has his or her own view of what the DCS is and what the ACRs are.

And I can see, from having heard a lot of testimony on this subject, that there is so



much room for argument when you enter into a contract that leaves as vital a matter as the acceptance rate undefined from the start, so I don't think, Mr. Tomaszczuk, that any of these designations are necessary to your case. Now, that said, if you still feel otherwise, then we shall proceed.

MR. TOMASZCZUK: Let me offer an alternative, Your Honor.

THE COURT: Yes.

MR. TOMASZCZUK: And it was one that Mr. Lo Re suggested this morning and that I actually discussed very briefly with him at lunch, which is I don't feel I can, for purposes of the final record in this case and where it might go, I can withdraw these three designations at this point in time. However, I would like the opportunity, so if the Court insists that I proceed now, then I think we will have to do that.

However, as an alternative, in the interest of further winnowing down the volume of material that we may need, and I have to admit in all candor, I have not had a chance to read the entire record of the now eight weeks



afe2c9ee-6081-4e75-892e-c851f7a00aae

of testimony that we have, but I think in the course of preparing our initial post-trial brief, which is due on the 2nd of February, I will be able to do that.

And if there are any particular portions of the testimony of these three individuals that we feel we need in our brief, I would ask that we have the opportunity to present those to the Court, and the government can respond, and we can do that before the second of February.

THE COURT: That's a fair compromise. Mr. Lo Re, I didn't appreciate the wisdom of your suggestion, but only because, at the time, I didn't know what the designations were to be covering.

MR. LO RE: No, that would be fine, Your Honor.

THE COURT: But if that's acceptable to you, it is to Mr. Tomaszczuk.

MR. LO RE: Absolutely, Your Honor.

THE COURT: And then let us defer rulings on the designations until such time as we know whether in fact they will be needed.

MR. TOMASZCZUK: And I can even



propose a date for that, Your Honor, if that would be helpful.

THE COURT: Surely, or you can give it to us in an agenda. No, we'll take it down now.

MR. TOMASZCZUK: I was going to suggest, if our brief is due on the 2nd of February, that I think we'd be in a position to advise the Court on this, and we can do it in writing, let's say on the 24th of January, something like that. We've both, on this side of the table and on the other side, will be in trial the previous week before Judge Braden.

So I was going to suggest, Wednesday, the 24th of January.

MS. SULLIVAN: Your Honor, if I could make a further suggestion instead, could Mr. Tomaszczuk -- because they, the way we've set up the briefing with their post-trial brief being first and then we have a response, those designations he think are necessary, he cite those in his post-trial briefing, and we respond to those in our response. This is the way we had it in PG&E in Judge Hewitt's.

THE COURT: I think that's an



excellent suggestion.

MS. SULLIVAN: And then we can deal with our objections, and if there's any argument that needs to be held, we can decide that, is that all right?

THE COURT: Yes, that's excellent.

MR. TOMASZCZUK: I think that suggestion -- so we would identify in our pretrial brief --

THE COURT: Post-trial.

MR. TOMASZCZUK: I'm sorry, our post-trial brief, any designations of the subset I've identified on which we rely.

THE COURT: Excellent, very good.

MR. TOMASZCZUK: And when the government, just so I'm clear, and I presume the government is not going to rely on any designations in its brief, unless we designate some of those same deponents' testimony in our brief?

MS. SULLIVAN: Ours would be in the nature of responsive counterdesignations that we're allowed to, pursuant to the rules, provide further context --

THE COURT: For any designations.



MS. SULLIVAN: Right.

THE COURT: That might be adopted.

MS. SULLIVAN: Ours would be responsive to any identified in briefing.

THE COURT: Okay. Very good.

MR. TOMASZCZUK: That seems fine.

THE COURT: That's excellent, very good.

MR. TOMASZCZUK: So then except for that issue, I think the record would be deemed closed.

THE COURT: Yes, it would be. I was just about to say that.

MR. TOMASZCZUK: I'm sorry. I just wanted to make sure.

THE COURT: No, I'm glad you did. Madam Reporter, Mr. Tomaszczuk has stated where we are at this point. We have concluded the receipt of the trial testimony in this case, the oral testimony. Any additional testimony which would be added to the record will be introduced by way of the party's initial briefs, and that additional testimony will be confined to designations of earlier sworn testimony by Mr. Barrett, Mr. Brownstein, and