# UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ENTERGY NUCLEAR GENERATION CO., | ) | |
| Plaintiff, | ) | |
| v. | ) | Docket No. 03-2626C |
| UNITED STATES, | ) | |
| Defendant. | ) | |

Pages: 1 through 15

PlaceWashington, D.C.

Date:April 25, 2008

**HERITAGE REPORTING CORPORATION**

*Official Reporters*

1220 L Street, N.W., Suite 600

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ENTERGY NUCLEAR GENERATION CO., | ) | |
| Plaintiff, | ) | |
| v. | ) | Docket No. 03-2626C |
| UNITED STATES, | ) | |
| Defendant. | ) | |

Courtroom 7, Room 508
National Courts Building
717 Madison Place NW
Washington, D.C.

Friday,
April 25, 2008

The parties met, pursuant to notice of the Court, at 2:05 p.m.

BEFORE: HONORABLE CHARLES F. LETTOW
Judge

APPEARANCES:

<u>For the Plaintiff</u>:

L. JAGER SMITH, JR., Esquire
Wise Carter Child & Caraway, P.A.
1340 Echelon Parkway
Jackson, Mississippi 39213
(601) 368-5572

ALEX D. TOMASZCZUK, Esquire
Pillsbury Winthrop Shaw Pittman, LLP
1650 Tysons Boulevard
McLean, Virginia 22102
(703) 770-7900

APPEARANCES: (Cont'd.)

For the Defendant:

ALAN J. LO RE, Esquire
JOSHUA GARDNER, Esquire
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, N.W.
Washington, D.C. 20530
(202) 307-0226/305-7583

P R O C E E D I N G S

(2:05 p.m.)

THE CLERK: All rise. The United States Court of Feder

Claims is now in session, the Honorable Charles F. Lettow presidi

THE COURT: Please be seated. The case before the Court this afternoon is Entergy Nuclear Generation Co. v. United Case No. 03-2626.

We have some familiar faces in the courtroom. Mr. Smith, would introduce yourself and Mr. Tomaszczuk?

MR. SMITH: Thank you, Your Honor. Jager Smith for Entergy Nuclear Generation Company. With me today is Alex Tomaszczuk of the Pillsbury Winthrop Shaw Pittman firm.

THE COURT: Thank you, Mr. Smith. Mr. Lo Re, would you introduce yourself and Mr. Gardner?

MR. LO RE: Certainly, Your Honor. Good afternoon. Al Lo Re from the Department of Justice representing the United State with me today is Joshua Gardner also from the Department of Justic

THE COURT: Welcome. It's good to see everyone again.

MR. LO RE: Thank you, Your Honor.

THE COURT: We have just been having an interesting discourse with the Clerk's Office on how to handle, not the gover appeal but Entergy Nuclear Generation Co.'s appeal in Boston Edi I'm trying to explain to them what the setting is. I think we've

the message across. We'll hope everything goes okay.

There aren't many cases on the Court's docket dating ba to 2003 or older, but this is one of them. This status conferen scheduled at a time when the Court believed that the parties migh sorted their positions out in <u>Boston Edison</u> and what to do with <u>Edison</u> and you might have a judgment about what, if anything, shou done with this case while <u>Boston Edison</u> is on appeal.

The Court recognizes that there are a variety of issues are still under consideration in that respect, but, Mr. Smith, do view? Do you have a proposal or any plan that would help the Cour

MR. SMITH: Your Honor, I don't know if I can help the Court, but Entergy Nuclear Generation Co. would prefer at this po continue our case in a stay mode if we could.

We have at this point in time fairly limited damages as cases go. We have some rack expenditures that the Court might re discussed from the <u>Boston Edison</u> portion of the case that have b expended at this point. Given that the <u>Indiana- Michigan</u> case rec to only bring presently incurred damages, our damages that we hav relatively small, of course.

There is the appeal of the <u>Boston Edison</u> portion of the that might affect the way any setoff might be addressed in our po the case, so given those facts it would be our preference at this continue the stay in our portion of the case.

THE COURT: We've not actually had a stay in place, but for practical purposes the case has been quiescent, and I think parties not only recognize that, but wanted that result. Would yo want a stay to be issued?

MR. SMITH: I suppose we would be indifferent to whethe it's called a stay or whether we continue the class enforcement case as you might determine.

I think we would not care one way or another how it's termed. If the Court has a preference we will certainly make eve to accommodate that.

THE COURT: No, the Court does not. That's why I'm definitely asking for the parties' views on what the parties want

The Court notes that the complaint in this case was fil November 5, 2003. We do have a six- year statute of limitations p and that was another question. I'm just a little hesitant, but c just to stay the case because at some point you're going to want something with the filing date and the six-year period.

MR. SMITH: There may be smarter legal minds than I to opine on this, but I was under the impression that the filing da have tolled the statute of limitations as to claims up to six year filing or even after the filing, but perhaps I have that wrong.

THE COURT: I don't think that's necessarily so in the cases, given how the Court of Appeals in Indiana-Michigan framed

decision. This has come up. I know Mr. Lo Re and Mr. Gardner a familiar with this in other cases.

There have been in other cases amendments to the complaint that were basically worked out between the parties that forward damages to a point in time where you could have a trial o just past the time of the filing of the complaint so that you cou trial on damages up to a given point. We of course did that i Arkansas case.

MR. SMITH: Correct.

THE COURT: It's been done in other cases as well, but Court just doesn't have a view. I just note that that seemed to issue, really.

MR. SMITH: That was not an issue that I was aware of because I would have felt that any amendment would relate back to original filing date. That's something we probably should look i

What we had talked about earlier between my co-counsel and myself would be that we would ask the Court to stay the case through the end of this year and perhaps have the parties provide report to the Court early next year.

I believe that we're not running up against any statut limitations issue, however the statute of limitations would be.

THE COURT: That's right. It would be not until Novemb of 2009 that you'd start running into that issue. That's right.

everybody would agree with that.

MR. SMITH: So I believe that would be our proposal at

juncture, that we either leave the case viable or put it in a sta

the Court pleases to do that, and have the parties report back pe

the beginning of next year, perhaps sometime in the middle of Jan

for example.

THE COURT: All right. We'll hear from Mr. Lo Re and h

colleague on that. Mr. Lo Re?

MR. LO RE: Thank you, Your Honor.

THE COURT: I don't know kind of what you're going to e

up with for a briefing schedule in Boston Edison, and I say tha

because anytime the Clerk's Office calls us when they're trying t

case organized for appeal that's trouble right there. That happe

we wish you well obviously.

MR. LO RE: We appreciate the heads up, Your Honor. As

said before, the case at the trial level was in many ways like

three-dimensional chess.

THE COURT: Yes.

MR. LO RE: And I suppose it's no different when we get

the appellate level. Maybe even four dimensional.

THE COURT: Well, you have to work that out with the Cle

of the Federal Circuit, but at least we're trying to help them ou

say.

MR. LO RE: No one said these cases were simple. That' for sure.

THE COURT: No.

MR. LO RE: Your Honor, I don't really have much to add what Mr. Smith said other than the fact that, and maybe it's echo he said, but I think there are some very valid reasons to keep the

I think our preference would be rather than to stay it it where it is now, that is in a somnambular stage, if you will, of reasons, not the least of which is the fact that there are issu very well be raised on appeal that are going to directly affect th

Further, as Mr. Smith said, there is just a practical ma damages which haven't been incurred or the costs haven't been inc to date. There are other cases where we have done similar holdin of the trial.

One that comes to mind is the trial we had with Judge Braden, SFI Mississippi, where there was a period of time that I that they were still incurring costs related to that. There was a complaint in that case just like in that one and that would be on ways we could remedy this.

The other issue, the other real issue, is I don't think a stay necessarily, but there's a very real issue of other cases appeal that may inform this case, including the Yankee appeal, Ya Atomic, SMUD and PG&E, as well as the Nebraska Power case, all c

which have been fully briefed and argued before the Federal Circui

THE COURT: And there have been no decisions in those cases to date.

MR. LO RE: No decisions.

THE COURT: Is that right?

MR. LO RE: That's correct, Your Honor. So again, I wouldn't say we need a stay because of that, but I think it's pru everything else that that's just another factor to consider when about how this case should proceed.

Finally, I alluded to this earlier. I think one way to the issue of the statute of limitations is for the Plaintiff to a perhaps this is something we can address as we move down the line file an amended complaint, which we have done in other cases.

The government wouldn't oppose that, and that way we could work around this issue of this little hole in the claim to statute of limitations.

THE COURT: All right. If the parties can work together reach an accommodation, one or the other or of each other, so tha agreed that would be helpful. You've certainly worked with each other cases before and been quite successful in matters like that.

The Court just doesn't see any problem really trying to out what your preferences are for this case. The Court is perfec just to keep this in, as you say, some somnambular or quiescent

whatever word one uses, somewhat sleepy mode --

(Laughter.)

THE COURT: -- to see what happens next in a lot of the other matters and see if any of them have a bearing on what shoul done with this case. That's perfectly fine with the Court. It problem.

MR. LO RE: That's fine with us. Thank you.

THE COURT: It is? Okay.

Mr. Smith, would you mind if we just left the case quietly p along while you get some of these other matters sorted out?

MR. SMITH: No, Your Honor, we would not object to that all.

THE COURT: All right. What I think the Court might do ask the parties for a status report. I hate to do it very often. -- let's see

-- if we do it every six months?

I've never done that before that long, but in this par case I don't see any reason to do it any differently. Just set a status report. We'll pick out a date, if it's all right with yo months from today and then say something like every six months thereafter so there are no surprises in this case.

If you're amenable to that, that would help out becaus least you can tell the Court if there are any changes. You can c

file a notice or a status report at any time if you want somethin happen.

MR. SMITH: Entergy has no objection to that. That soun like a good plan.

THE COURT: All right. Mr. Lo Re?

MR. LO RE: Yes, Your Honor. That would be fine with t government.

I do appreciate that last comment that if something happ in another case, for instance, or somewhere else that could direct the case we would appreciate the opportunity to keep the Court in on that.

THE COURT: Absolutely. If you want something to happen in this case because of a development in another case, please tell we will take that under consideration.

MR. LO RE: Thank you.

THE COURT: That's what we would propose to do, just issue an order acknowledging that we had this status conference t and asking for a status report on the terms described.

MR. SMITH: That sounds fine.

THE COURT: I take it Plymouth is still running happi providing electricity to the citizens of Massachusetts and New Eng

MR. SMITH: Yes, Your Honor. We are hoping for a favorable outcome on our license renewal application and hope t

continue providing electricity for another couple of decades.

THE COURT: All right. We'll see what happens next. I
there anything further, Mr. Smith?

MR. SMITH: Nothing from ENGC.

THE COURT: All right. Thank you.

Mr. Lo Re?

MR. LO RE: Nothing from the government, Your Honor.

THE COURT: All right. Well, thank you very much. Tha
you for appearing. I wish you well with the appeal. I hope ther
procedural wrinkles. It's out of this Court's hands is all I can

Thank you.

ALL: Thank you.

THE COURT: We're adjourned.

THE CLERK: All rise.

(Whereupon, at 2:20 p.m., the hearing in the above-enti
matter was concluded.)

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

REPORTER'S CERTIFICATE

DOCKET NO.: 03-2626C

CASE TITLE: Entergy Nuclear v. United States

HEARING DATE: April 25, 2008

LOCATION: Washington, D.C.

I hereby certify that the proceedings and eviden are contained fully and accurately on the tapes and note reported by me at the hearing in the above case before th United States Court of Federal Claims.

Date: April 25, 2008

Theodore Fambro
Official Reporter
Heritage Reporting Corporation
Suite 600
1220 L Street, N.W.
Washington, D.C. 20005-4018